# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RODNEY NORDSTROM, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | : : : : | CASE NO. 3:20-CV-00904-VAB |
| Plaintiff, | : : | |
| v. | : : | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, MICHELLE D. WILSON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, and PATRICIA A. GOTTESMAN, | : : : : : : : : : | |
| Defendants, | : : | |
| WORLD WRESTLING ENTERTAINMENT, INC., | : : : | |
| Nominal Defendant. | : | SEPTEMBER 18, 2020 |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND .................................................................................................4

I.     The Securities Class Actions .................................................................................4

II.    The *Merholz* Action .........................................................................................6

III.   The *Kooi* Action.............................................................................................7

IV.   The *Nordstrom* Action .....................................................................................8

ARGUMENT .......................................................................................................................11

I.     Before Addressing the Jurisdictional Issue Raised By The Motion to Remand, The Court Can And Should Dismiss This Action Because Plaintiff Failed To Adequately Plead Demand Futility, A Necessary Threshold Showing. ..........................11

II.    The Court Should Deny The Motion to Remand Because It Has Federal Question Jurisdiction Over This Action. ..........................................................................16

     A.    Standards for Federal Question Jurisdiction .........................................16

     B.    This Action Necessarily Raises A Substantial and Disputed Federal Issue Over Which This Court May Exercise Jurisdiction. .............................19

          1.    Plaintiff's Allegations Necessarily Raise Federal Issues ...........19

          2.    The Federal Issues Are Disputed ..............................................29

          3.    The Federal Issues Are Substantial ...........................................30

          4.    The Federal Forum May Entertain This Case ............................32

III.   Even If This Action Does Not Raise A Federal Question, This Court Has Supplemental Jurisdiction Because It Is Related To The *Merholz* Action .......................33

     A.    Standards for Supplemental Jurisdiction Over Related Actions............................33

     B.    The Court Has Supplemental Jurisdiction Over This Action ...............................34

CONCLUSION....................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actman v. Kirby, McInerney & Squire, LLP,*
  364 F.3d 328 (2d Cir. 2006)..............................................................................34, 36

*Alderman v. Pan Am World Airways,*
  169 F.3d 99 (2d Cir. 1999)........................................................................................36

*In re Allion Healthcare Inc. Shareholders Litig.,*
  No. CIV.A. 5022-CC, 2011 WL 1135016 (Del. Ch. Mar. 29, 2011) ......................15

*Austin v. Walton,*
  No. 4:14CV00528, 2014 WL 11510420 (E.D. Ark. Nov. 17, 2014).......................24

*Black v. Pitney Bowes, Inc.,*
  No. 05 CIV 108, 2008 WL 3992306 (S.D.N.Y. Aug. 26, 2008) .............................37

*Broder v. Cablevision Sys. Corp.,*
  418 F.3d 187 (2d Cir. 2005).....................................................................................18

*In re Capital One Derivative S'holder Litig.,*
  No. 1:12CV1100, 2012 WL 6725613 (E.D. Va. Dec. 21, 2012).................24, 31, 33

*City of Warren Police & Fire Retirement System. v. World Wrestling Entertainment. Inc.,*
  No. 20CV02031 (S.D.N.Y.) ...................................................................................4, 5

*In re Cooper Co.,*
  No. 12584, 2000 WL 1664167 (Del. Ch. Oct. 31, 2000)........................................15

*D'Alessio v. New York Stock Exch., Inc.,*
  258 F.3d 93 (2d Cir. 2001)......................................................................17, 20, 30, 31

*Ekas v. Burris,*
  No. 07CV61156, 2007 WL 4055630 (S.D. Fla. Nov. 14, 2007) .............................27

*Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.,*
  106 F. Supp. 2d 1088 (D. Colo. 2000).....................................................................27

*Exxon Mobil Corp. v. Allapattah Services, Inc.,*
  545 U.S. 546 (2005)..................................................................................................18

*F5 Capital v. Pappas,*
  856 F.3d 61 (2d Cir. 2017)........................................................................................18

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*,
  797 F.3d 148 (2d Cir. 2015)...................................................................12, 13, 14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  922 F. Supp. 2d 445 (S.D.N.Y. 2013)...............................................................14, 15

*Fagin v. Gilmartin*,
  No. 03CV2631, 2007 WL 419286 (D.N.J. Feb. 1, 2007)........................................27

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
  463 U.S. 1 (1983)...............................................................................................18

*Gamoran v. Neuberger Berman Mgmt., LLC*,
  No. 10CV6234, 2010 WL 4537056 (S.D.N.Y. Nov. 8, 2010) ...............................24

*Gan v. Hillside Ave. Associates*,
  No. 01CV8457, 2001 WL 1505988 (S.D.N.Y. Nov. 26, 2001) .............................19

*Gobble v. Hellman*,
  No. 1:02CV0076, 2002 WL 34430286 (N.D. Ohio Mar. 26, 2002).......................24, 28, 29, 30

*In re Goodyear Tire & Rubber Co. Derivative Litig.*,
  No. 5:03CV2180, 2004 WL 7330711 (N.D. Ohio Apr. 7, 2004) ..............................23, 25, 29

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)............................................................................................17, 19, 30

*Gunn v. Minton*,
  568 U.S. 251 (2013)............................................................................................19, 30

*Hallingby v. Hallingby*,
  574 F.3d 51 (2d Cir. 2009)...................................................................................18

*Haseotes v. Bentas*,
  No. CIV A. 19155, 2002 WL 31058540 (Del. Ch. Sept. 3, 2002) .........................15

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016)................................................................................19, 30, 32

*Kooi v. McMahon et al.*,
  No. 3:20-CV-00743-VAB (D. Conn.) .......................................................... *passim*

*Landers v. Morgan Asset Mgmt., Inc.*,
  No. 08CV2260, 2009 WL 962689 (W.D. Tenn. Mar. 31, 2009)....................23, 26, 28, 32, 33

*Sung ex rel. Lazard Ltd. v. Wasserstein*,
  415 F. Supp. 2d 393 (S.D.N.Y. 2006)..................................................................27, 28

*Arlia ex rel. Massey Energy Co. v. Blankenship*,
  234 F. Supp. 2d 606 (S.D.W. Va. 2002) ..............................................................28

*Megibow v. Hagen*,
   No. 09CV10578, 2010 WL 304541 (S.D.N.Y. Jan. 26, 2010) .........................................34, 36

*Merholz et al. v. McMahon, et al.*,
   No. 3:20-cv-00557-VAB (D. Conn.) ............................................................................. *passim*

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006)..........................................................................................................30

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
   136 S. Ct. 1562 (2016)................................................................................................17, 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*,
   399 F. Supp. 2d 340 (S.D.N.Y. 2005)..............................................................................37

*Flynn ex rel. Moody's Corp. v. McDaniel*,
   689 F. Supp. 2d 686 (S.D.N.Y. 2010)..............................................................................27

*Comm'n on Human Rights & Opportunities ex rel. Nammack v. 445 W. Putnam, LLC*,
   No. 3:19CV1767, 2020 WL 64299 (D. Conn. Jan 7, 2020) ....................................................26

*NASDAQ OMX Group, Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014).................................................................................17, 20, 32

*Nordstrom v. McMahon et al.*,
   No. 3:20-CV-00904-VAB (D. Conn.) ......................................................................8, 35, 36

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) ...............................................................................13, 14, 15

*Prince v. Berg*,
   No. C 10-4233 RS, 2011 WL 9103 (N.D. Cal. June 3, 2011) ................................................25

*Randolph v. Forsee*,
   No. 10-2445, 2010 WL 5148293 (D. Kan. Dec. 13, 2010) ....................................................27

*Resnik v. Swartz*,
   303 F.3d 147 (2d Cir. 2002)............................................................................................22

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)........................................................................................................12

*In re September 11 Litig.*,
   906 F. Supp. 2d 295 (S.D.N.Y. 2012)..........................................................................34, 36

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)........................................................................................................12

*Staehr v. W. Capital Res., Inc.*,
   No. CIV. 10-1806, 2010 WL 4338652 (D. Minn. Sept 24, 2010) ...........................................23

*Szaniawski v. World Wrestling Entertainment, Inc., et al.*,
    Case No. 20-cv-02223 (S.D.N.Y.) ...................................................................................5

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) .........................................................................................22

*Emory ex rel Wal-Mart Stores, Inc. v. Duke*,
    No. 5:12CV5171, 2013 WL 12284520 (W.D. Ark. Mar. 19, 2013)..................................23, 29

*Walker v. Bolt Tech. Corp.*,
    No. 3:14-CV-01406, 2014 WL 7404762 (D. Conn. Nov. 3, 2014) .........................................18

*Watson Pharmaceuticals, Inc. v. Bayer Pharma AG*,
    No. 12CV6089, 2013 WL 5477498 (S.D.N.Y. Sept. 30, 2013) .............................................36

*Wietschner v. Gilmartin*,
    No. 02CV4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003)...................................24

**Statutes**

15 U.S.C. § 78aa ....................................................................................................17, 30, 32

28 U.S.C. § 1331 .............................................................................................................16

28 U.S.C. § 1367 .........................................................................................................18, 34

28 U.S.C. § 1441 .............................................................................................................16

**Regulations**

17 C.F.R. § 240.10b-5........................................................................................................21

**Rules**

Fed. R. Civ. P. 23.1 ..........................................................................................................14

Defendants Vincent K. McMahon, George A. Barrios, Michelle D. Wilson, Stephanie McMahon, Paul Levesque, Frank A. Riddick, III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler, and Patricia A. Gottesman ("Defendants") and Nominal Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submit this memorandum of law in opposition to the motion to remand filed by Plaintiff Rodney Nordstrom ("Plaintiff") (ECF No. 39).[1]

## PRELIMINARY STATEMENT

Plaintiff brought this copycat shareholder derivative action in Connecticut state court alleging that Defendants breached their fiduciary duties by violating the federal securities laws. This action followed *four* other lawsuits claiming that Defendants violated the federal securities laws based on the *same* factual allegations: two putative securities class actions filed in the Southern District of New York and two nearly identical shareholder derivative actions pending in the District of Connecticut, including one over which this Court indisputably has subject matter jurisdiction. Each of these lawsuits alleged that WWE violated the federal securities laws based on allegations that statements in its SEC filings and other public disclosures concerning the status of negotiations of a media rights agreement in the Middle East were false and misleading.

Plaintiff now seeks to circumvent the jurisdiction of the federal courts by moving to remand this action to state court after Defendants properly removed it to this Court—where two nearly identical shareholder derivative actions are already pending before this Court. *See*

---

[1] In his motion to remand, Plaintiff adopts and incorporates the arguments set forth in the motion to remand filed in the *Kooi* action. Defendants therefore adopt and incorporate the arguments made in opposition to the motion to remand filed in the *Kooi* action to the extent such arguments are not discussed herein. *See Kooi v. McMahon et al.*, No. 3:20-CV-00743-VAB (D. Conn.), ECF No. 32.

*Merholz et al. v. McMahon, et al.*, No. 3:20-cv-00557-VAB (D. Conn.) ("*Merholz*"); *Kooi v. McMahon et al.*, No. 3:20-CV-00743-VAB (D. Conn.) ("*Kooi*"). This Court should deny the motion to remand filed by Plaintiff for several reasons.

**First**, as Defendants demonstrated in their motion to dismiss filed on August 28, 2020 (ECF No. 59), this Court should dismiss this action on threshold grounds because Plaintiff has failed to satisfy the demand pleading requirements for shareholder derivative actions. It is well-established that courts may dismiss an action on threshold grounds unrelated to the merits of a dispute—including a plaintiff's failure to meet the demand pleading requirements in a shareholder derivative action—before addressing whether the Court has subject matter jurisdiction over the action on a motion to remand.

The issue of whether Plaintiff has satisfied the demand pleading requirements is logically antecedent to the issue of whether the Court has subject matter jurisdiction over this action because Plaintiff cannot bring a shareholder derivative action in *any* court without meeting such requirements. Moreover, considerations of judicial economy and consistency favor addressing the issue of whether Plaintiff has satisfied the demand pleading requirements first. This Court will have to decide the same issue in the *Merholz* action already pending before it and over which its jurisdiction is firmly established. Remanding this case to state court will result in an unnecessary waste of judicial resources because it would require different judges to decide the same issue with the concomitant risk of inconsistent rulings. Accordingly, this Court should decide—and dismiss—this action on the threshold ground that Plaintiff has failed to meet the demand requirements in a shareholder derivative action before reaching the issue of subject matter jurisdiction.

**Second**, even if this Court were to reach the jurisdictional issue, this Court has subject matter jurisdiction over this action because it raises a substantial and disputed federal question. Federal courts have exclusive jurisdiction over claims alleging violations of the federal securities laws. Plaintiff admits that this case was based on the allegations of the related federal securities lawsuits that were filed against the same Defendants in federal court. Plaintiff alleges that Defendants breached their fiduciary duties solely because they violated the federal securities laws—no other laws are alleged to be violated and no other basis for the claim is asserted. Plaintiff alleges that Defendants made false and misleading statements in SEC filings and other public disclosures in violation of the federal securities laws. Plaintiff alleges that such statements were false and misleading because they omitted material information that Defendants had a duty to disclose under the federal securities laws. Plaintiff alleges that making a demand on WWE's board of directors would have been futile because the Audit Committee members caused the company to disseminate false and misleading statements in its SEC filings and other disclosures in violation of the federal securities laws. Plaintiff's allegations of damages are entirely based on claims that the alleged violations of the federal securities laws caused WWE's stock price to decline and that WWE has been forced to incur substantial costs as a result of the federal securities lawsuits. If this Court did reach the merits, it would have to determine whether Defendants violated the federal securities laws—the same determination that will have to be made in the other pending federal lawsuits based on substantially similar allegations. Accordingly, this Court has subject federal question jurisdiction over this action.

**Third**, even if this action had not raised a federal question, this Court should exercise supplemental jurisdiction over this action and *Kooi* because they are closely related to the *Merholz* action over which it unquestionably has subject matter jurisdiction. The existence of

subject matter jurisdiction in one action can provide a court with supplemental jurisdiction over claims in separate, but related, actions involving substantially overlapping facts—even if those actions do not raise a federal question. The *Merholz* action, the *Kooi* action, and this action are nearly identical shareholder derivative lawsuits filed against current or former WWE officers and directors. After the *Kooi* action and this action were filed, they were transferred to this Court because they are related to the pending *Merholz* action. All three cases assert essentially the same claims against the same Defendants based on the same factual allegations copied from the federal securities class action. Because this action and *Kooi* arise from the same nucleus of facts as the *Merholz* action, this Court may exercise supplemental jurisdiction over this action and *Kooi*.

Accordingly, this Court should deny Plaintiff's motion to remand—either because the action must be dismissed for failure to meet the demand pleading requirements or because it is proper for this Court to assert subject matter jurisdiction over the claims presented.

## FACTUAL BACKGROUND

This case was the fifth shareholder lawsuit filed against WWE officers and directors alleging violations of the federal securities laws premised on the same allegations that WWE made misstatements and omissions concerning its business dealings in Saudi Arabia.

## I.     The Securities Class Actions

On March 6, 2020, City of Warren Police and Fire Retirement System filed a putative securities class action complaint against WWE, McMahon, Barrios, and Wilson in the Southern District of New York. The complaint asserted claims that WWE violated Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 and that the individual defendants violated Section 20(a) of the Exchange Act. *See City of Warren Police &*

*Fire Retirement System v. World Wrestling Entertainment. Inc., et al.*, Case No. 20-cv-02031 (S.D.N.Y.) (ECF No. 1) ("*City of Warren*"). On May 26, 2020, the defendants served the plaintiff with a Rule 11 motion accompanied by six detailed affidavits from WWE executives and third parties with firsthand knowledge of the events at issue conclusively refuting the numerous false allegations in the *City of Warren* complaint. On June 4, 2020, City of Warren voluntarily dismissed its original complaint to avoid the imposition of Rule 11 sanctions.

On March 12, 2020, Paul Szaniawski filed a copycat putative securities class action complaint against the same defendants in the Southern District of New York. The complaint asserted the same claims that the defendants violated the same federal securities laws based on the same allegations apparently without conducting any independent investigation. *See Szaniawski v. World Wrestling Entertainment, Inc., et al.*, Case No. 20-cv-02223 (S.D.N.Y.) (ECF No. 1) ("*Szaniawski*"). On May 26, 2020, the defendants served the plaintiff with a Rule 11 motion accompanied by the same affidavits detailing the numerous false allegations in the *Szaniawski* complaint. On June 3, 2020, Szaniawski also voluntarily dismissed his complaint to avoid the entry of Rule 11 sanctions. (ECF No. 22.)

Prior to the voluntarily dismissals of the *City of Warren* and *Szaniawski* complaints, on May 12, 2020, the Court in the Southern District of New York consolidated the two federal securities class actions for all purposes. (ECF No. 44.) On May 22, 2020, the Court appointed the Firefighters Pension System of the City of Kansas City Missouri Trust as the lead plaintiff in that case. (ECF No. 50.) On June 8, 2020, the lead plaintiff filed a Consolidated Amended Class Action Complaint ("CAC") that repeated many of the false allegations that were asserted in the prior complaints. *See City of Warren*, Case No. 20-cv-02031 (S.D.N.Y.) (ECF No. 57). On August 6, 2020, the Court denied the defendants' motion to dismiss the CAC in reliance on the

false allegations that the other firms withdrew after service of the Rule 11 motions and that will be brought to Court's attention at the appropriate time. (ECF No. 68.)

## II.     The *Merholz* Action

On April 24, 2020, plaintiffs Ryan Merholz and Melvyn Klein filed a shareholder derivative action against 12 current or former WWE officers and directors in the District of Connecticut, which was assigned to this Court. The complaint asserted five claims: (1) breach of fiduciary duty, (2) unjust enrichment, (3) waste of corporate assets, (4) violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5, and (5) violations of Section 20(a) of the Exchange Act. *See Merholz et al. v. McMahon, et al.*, No. 3:20-cv-00557 (D. Conn.) (ECF No. 1) ("*Merholz*"). These claims were based on nearly identical factual allegations copied from the federal securities lawsuits, ostensibly without conducting any independent investigation. As the *Merholz* complaint expressly pleads federal causes of action, there is no question that this Court has subject matter jurisdiction over the claims in that case, including the same breach of fiduciary duty, unjust enrichment, and waste claims asserted in this case.

On May 29, 2020, the defendants served the *Merholz* plaintiffs and their counsel with a Rule 11 motion accompanied by the same affidavits detailing the numerous false allegations in the *Merholz* complaint. The service of the Rule 11 motion prompted the plaintiffs to withdraw the original complaint and file an amended complaint on June 19, 2020. (ECF No. 7.) Because the amended complaint withdrew some but not all of the allegations violating Rule 11, the defendants served the *Merholz* plaintiffs with a Rule 11 motion regarding the amended complaint on July 2, 2020. To avoid the imposition of sanctions, the *Merholz* plaintiffs filed a second amended complaint on July 28, 2020. (ECF No. 39-1.) The defendants filed their motion to dismiss the second amended complaint on August 28, 2020. (ECF No. 57.)

## III.    The *Kooi* Action

On May 7, 2020, plaintiff Daniel Kooi filed a copycat shareholder derivative action against 13 current or former WWE officers and directors in Connecticut Superior Court.  Except for one additional defendant (Patricia Gottesman), the complaint named the same defendants that were included in the *Merholz* action.  The complaint similarly asserted that the defendants violated the federal securities laws based on the same statements alleged in the *Merholz* action and asserted two of the same claims asserted in the *Merholz* action:  (1) breach of fiduciary duty and (2) unjust enrichment.  *See Kooi v. McMahon et al.*, No. 3:20-CV-00743-VAB (D. Conn.) (ECF No. 1) ("*Kooi*").[2]  The *Kooi* complaint was based on virtually identical allegations copied from the other lawsuits, again without conducting any reasonable independent investigation.

On June 1, 2020, the defendants filed a Notice of Removal of the *Kooi* action to this Court because it raised a federal question under the federal securities laws.  (*Id.*)  On June 2, 2020, the *Kooi* action was transferred to this Court because it was related to the pending *Merholz* action.  (ECF No. 27.)  The plaintiff in the *Kooi* action moved to remand the action on June 8, 2020.  (ECF No. 30.)  The defendants filed their opposition to that motion on June 29, 2020. (ECF No. 32.)

In the motion to remand, the plaintiff in the *Kooi* action restated the allegations that violated Rule 11 in this Court.  Accordingly, on June 12, 2020, the defendants served the plaintiff in the *Kooi* action with a Rule 11 motion.  Prior to the expiration of the safe harbor period, on July 3, 2020, the plaintiff in the *Kooi* action filed an amended complaint to avoid the

---

[2] The amended complaint in the *Kooi* action added a third claim for insider selling against Defendants McMahon, Wilson, and Barrios.  (ECF No. 36.)

imposition of sanctions. (ECF No. 36.) The defendants filed their motion to dismiss the amended complaint on August 28, 2020. (ECF No. 67.)

## IV.    The *Nordstrom* Action

On June 3, 2020, Plaintiff Rodney Nordstrom filed the instant copycat shareholder derivative action in Connecticut Superior Court against 13 current or former WWE officers and directors. The complaint named the same Defendants that were included in the *Kooi* action. The complaint similarly alleged that Defendants violated federal law based on the same statements alleged in the *Merholz* and *Kooi* actions. The complaint asserted five claims: (1) breach of fiduciary duty, (2) unjust enrichment, (3) abuse of control, (4) gross mismanagement, and (5) waste of corporate assets. *See Nordstrom v. McMahon et al.*, No. 3:20-CV-00904-VAB (D. Conn.) (ECF No. 1) ("*Nordstrom*").[3] Three of the same claims (breach of fiduciary duty, unjust enrichment, and waste of corporate assets) were also asserted in the *Merholz* action, and two of the same claims (breach of fiduciary duty and unjust enrichment) were also asserted in the *Kooi* action. The *Nordstrom* complaint is based on virtually identical allegations copied from the other lawsuits, once again without conducting any reasonable independent investigation.

Like each of the other complaints, the *Nordstrom* complaint alleges that Defendants made "**materially false and misleading statements**" to the market and to shareholders in "**SEC filings and other disclosures**" with respect to business dealings between WWE and Saudi Arabia. *See* Compl. ¶¶ 9, 90–112, 152; Am. Compl. ¶¶ 4–5, 87–110, 151. Based on a perpetuation of these allegations copied from the other complaints, including the two securities complaints that were voluntarily dismissed to avoid Rule 11 sanctions and the two other

---

[3] The amended complaint in the *Nordstrom* action removed the claims of abuse of control and gross mismanagement. (ECF No. 45.)

shareholder derivative complaints that have since been amended in the face of Rule 11 motions, Plaintiff accuses Defendants of breaching their fiduciary duties by violating the federal securities laws. Plaintiff specifically alleges:

> 156. In breach of their fiduciary duties owed to WWE, the Individual Defendants willfully or recklessly caused the Company to **violate federal regulations** by falsely stating and/or failing to disclose [the Company's true business performance].

> 157. The Individual Defendants had actual or constructive knowledge that the Company issued the materially false and misleading statements, and that they failed to correct those public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain or disclose such facts, even though such facts were available to them. **Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of WWE's securities**.

> 158. The Individual Defendants had actual or constructive knowledge that they had caused the Company to engage in the **fraudulent schemes** set forth herein improperly and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the **fraudulent schemes** set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to engage in the **fraudulent schemes** improperly and to fail to maintain adequate internal controls, even though such facts were available to them. **Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of WWEs securities.**

Compl. ¶¶ 156–58 (emphasis added); Am. Compl. ¶¶ 155–57 (emphasis added). Plaintiff therefore bases his breach of fiduciary duty claim on allegations that Defendants made materially false and misleading statements in violation of federal laws and regulations in order to inflate the price of WWE's securities. Indeed, Plaintiff acknowledges that the **federal securities class action** "seeks to hold [the defendants] liable for much of the **same wrongdoing as is alleged herein**." Compl. ¶ 138 (emphasis added); Am. Compl. ¶ 134 (emphasis added).

Plaintiff's claim that making a demand on WWE's board of directors would have been futile also rests solely on his allegations that members of the Audit Committee breached their fiduciary duties by violating the federal securities laws.

> 152. Defendants Speed, Goldfarb, and Singh breached their fiduciary duties of due care, loyalty, and good faith because the Audit Committee, *inter alia,* **allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures** and, otherwise, failed to ensure that adequate controls were in place regarding the serious disclosure and other deficiencies described herein. Thus, Defendants Speed, Goldfarb, and Singh face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

Compl. ¶ 152 (emphasis added); Am. Compl. ¶ 151 (emphasis added).

Moreover, Plaintiff's damages claim rests on his allegations that Defendants failed to disclose information in violation of the federal securities laws and that WWE's stock price declined when such information was revealed to the public. Compl. ¶ 10; Am. Compl. ¶ 6 (alleging that "[w]hen the Individual Defendants' wrongful conduct came to light, the price of WWE stock fell from $100 per share to $40.24 per share on February 6, 2020, for a 60% share price decline"). Plaintiff also seeks damages for the WWE's expenditures in defending the very federal securities lawsuit on which his own action was based:

> 11. As a result of the foregoing, WWE and its chief executive officer have been named as defendants in a **federal securities lawsuit** by investors who allege they were damaged when they purchased WWE shares during the Relevant Period. *Paul Szaniawski v. World Wrestling Entertainment, Inc. et al.*, Case No. 1:20-cv-02223 (S.D.N.Y.)

> 12. **This securities litigation** has subjected the Company to internal investigations, losses from the waste of corporate assets, and losses due to the unjust enrichment of Individual Defendants who were improperly over-compensated by the Company. It will likely cost the Company millions of dollars going forward. . . .

> 123. Such expenditures include, but are not limited to, legal fees associated with the **federal securities lawsuit filed against the Company**, its chief executive

officer, any internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto. . . .

173. The Individual Defendants have caused WWE to waste valuable corporate assets, **to incur millions of dollars in legal liability and/or costs to defend unlawful actions**, to overpay for WWE's own stock during the portion of the Relevant Period that at least included the period from February 2019 to February 2020, while the stock price was artificially inflated due to the false and misleading statements and omissions that the Individual Defendants made and/or caused the Company to make, and to lose assets from investors and customers who no longer trust the company.

Compl. ¶¶ 10–12, 123, 173 (emphasis added); Am. Compl. ¶¶ 6–7, 9, 119, 166 (emphasis added). Plaintiff seeks damages for legal fees incurred by WWE notwithstanding that his derivative action is entirely duplicative of the two other derivative actions that have already been filed based on the same conduct and which were also patterned after the allegations in the federal securities class action.

On July 1, 2020, Defendants filed a Notice of Removal of the instant action to this Court because it raised a federal question and this Court has supplemental jurisdiction over it. (ECF No. 1.) On July 7, 2020, this action was transferred to this Court because it was related to the pending *Merholz* and *Kooi* actions. (ECF No. 20.) Following service of a Rule 11 motion on July 24, 2020, Plaintiff filed an amended complaint on August 14, 2020 to avoid the entry of sanctions. (ECF No. 45.) Defendants filed their motion to dismiss the amended complaint on August 28, 2020. (ECF No. 59.)

**ARGUMENT**

**I.     Before Addressing The Jurisdictional Issue Raised By The Motion to Remand, The Court Can And Should Dismiss This Action Because Plaintiff Failed To Adequately Plead Demand Futility, A Necessary Threshold Showing**

This Court can—and should—dismiss this derivative action *before* it addresses the issue of subject matter jurisdiction raised by the motion to remand, because Plaintiff has failed to meet the demand pleading requirements under Rule 23.1.

The United States Supreme Court and the Second Circuit have held that courts may dismiss an action on threshold grounds unrelated to the merits of a dispute before addressing subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 585 (1999) (stating that "in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy" and observing that "it is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits"); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (recognizing that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'"); *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) (stating that "a court need not make a difficult determination as to subject matter jurisdiction when another clear threshold defect would warrant 'denying audience to a case on the merits'"). Such threshold issues may be addressed even though they may "involve a brush with 'factual and legal issues of the underlying dispute.'" *Sinochem,* 549 U.S. at 433.

The Second Circuit specifically has held that courts may determine whether plaintiffs in removed shareholder derivative actions have standing to assert their claims before addressing the issue of subject matter jurisdiction on a motion to remand. In *In re Facebook, Inc., Initial Public Offering Derivative Litigation*, the Second Circuit affirmed "the district court's ruling that the contemporaneous stock ownership requirement of Rule 23.1 may properly be considered and decided as a threshold matter before a difficult or novel question of subject matter jurisdiction." 797 F.3d at 158. "The complicated questions of subject matter jurisdiction arise in this case only if plaintiffs may properly proceed in a derivative capacity." *Id.* at 156. "Absent derivative standing, there is no derivative case, and no need to proceed to a jurisdictional inquiry, which is 'vital only if the court proposes to issue a judgment on the merits.'" *Id.* at 158. The Second

Circuit concluded that the "District Court committed no abuse of discretion in concluding that the dispositive, threshold standing question could be resolved first" because "the subject matter jurisdiction questions were complex, and judicial economy favored considering the related derivative actions together." *Id.* at 158. The Second Circuit recognized that judicial economy would not be served by "an onerous inquiry into subject matter jurisdiction in the removed actions, given that dismissal on the alternative threshold, non-merits issue of contemporaneous share ownership would be foreordained by its ruling" in another case "in which subject matter jurisdiction was firmly established." *Id.* at 159 (internal quotation marks and citation omitted).

In support of its conclusion, the Second Circuit cited the Ninth Circuit's decision in *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008), which held that a derivative action could be dismissed for failure to satisfy the demand pleading requirement of Rule 23.1 *before* considering the existence of subject matter jurisdiction. Rather than addressing the issue of whether the complaint raised a federal question first, the Ninth Circuit concluded that "we may consider at the outset whether [plaintiff] satisfied Federal Rule of Civil Procedure 23.1. Deciding that Rule 23.1 was not satisfied, we hold that the complaint should be dismissed and we need not further address jurisdiction." *Id.* at 1055. The Ninth Circuit reasoned:

> In this case, the issue of whether [plaintiff] satisfied the demand pleading requirements of Rule 23.1 is 'logically antecedent' to the issue of whether we have jurisdiction over this action. Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law. Therefore, unless we determine that a proper demand was made, there is no lawsuit over which to exercise jurisdiction. Thus, as in [other cases]*,* the jurisdictional issue would not exist but for this court's determination regarding the adequacy of [plaintiff's] demand.

*Id.* at 1055 (internal citations omitted). "Accordingly, we address whether Rule 23.1 was satisfied both because compliance with Rule 23.1 is 'logically antecedent' to assessing Article III issues, and because this raises an issue of state statutory standing." *Id.* at 1056.

Indeed, this Court recognized in its order establishing a briefing and argument schedule in this action that it had the flexibility to consider the issue of whether Plaintiff has met the demand pleading requirements on a motion to dismiss before addressing Plaintiff's motion to remand.  (ECF No. 40) (stating that "[t]his Court also has the flexibility to address any motions to remand and dismiss together, rather than in a specific order" and recognizing that "'[w]hen a determination as to subject matter jurisdiction raises a difficult or novel question, the district court has discretion to decide certain threshold bases for dismissal without deciding whether it has subject matter jurisdiction'") (quoting *In re Facebook Inc.*, 797 F.3d at 155).

Defendants have moved to dismiss this action on several grounds, including Plaintiff's failure to satisfy the demand pleading requirement under Rule 23.1.  For several reasons, this Court should decide this threshold issue first and dismiss this action before resolving the issue of whether it has subject matter jurisdiction.[4]

**First**, the issue of whether Plaintiff has satisfied the demand pleading requirements of Rule 23.1, and therefore whether Plaintiff can even bring a derivative action in the first instance, is logically antecedent to the Court's determination of subject matter jurisdiction.  *See Potter,* 546 F.3d at 1055; *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 922 F. Supp. 2d 455, 453–56 (S.D.N.Y. 2013).

**Second**, Plaintiff's failure to meet the demand pleading requirements also presents a threshold question of whether he has standing to bring a derivative action under Delaware law,

---

[4] Defendants also have moved to dismiss this action on the grounds that Plaintiff has failed to adequately plead that he satisfies the contemporaneous and continuous stock ownership requirements under Rule 23.1 and Delaware law—an additional threshold issue that the Court should decide before the motion to remand.  *See In re Facebook, Inc.*, 797 F.3d at 152 (concluding that the district court could "decide, as a threshold matter, whether plaintiffs adequately pleaded contemporaneous share ownership, as required by Federal Rule of Civil Procedure 23.1" before addressing subject matter jurisdiction).

which governs shareholder derivative claims asserted against WWE (a Delaware corporation). *See Haseotes v. Bentas*, No. CIV A. 19155, 2002 WL 31058540, at *4 (Del. Ch. Sept. 3, 2002) ("Under [Delaware Court of Chancery] Rule 23.1, for the plaintiffs to demonstrate that they have standing to maintain a derivative action, they must first make a demand on the Board to provide the directors an opportunity to address the claim."); *In re Cooper Co.*, No. 12584, 2000 WL 1664167, at *5 (Del. Ch. Oct. 31, 2000) ("To have standing to maintain a derivative action under Rule 23.1, a plaintiff must first make a demand on the board to redress the wrong being complained of, or demonstrate that a demand should be excused as futile.").

**Third**, consideration of the threshold issue of whether Plaintiff has satisfied the demand pleading requirements serves the interests of judicial economy and consistency because this Court will have to address precisely the same issue in the *Merholz* action—a case filed in this Court over which it unquestionably has subject matter jurisdiction. Remanding this case and the *Kooi* case to state court will unnecessarily burden two other judges with deciding exactly the same issue and risk the possibility of inconsistent rulings. *See In re Facebook, Inc.*, 922 F. Supp. 2d at 456 ("Adjudicating one case while remanding others with 'common issues' would be duplicative and beget potentially conflicting rulings by this Court and the California State Court. Avoiding this inefficiency and inconsistency further warrants the consideration of the justiciability issues before the removal issues."); *see also In re Allion Healthcare Inc. Shareholders Litig.*, No. CIV.A. 5022-CC, 2011 WL 1135016, at *4 (Del. Ch. Mar. 29, 2011) ("Defense counsel is forced to litigate the same case—often identical claims—in multiple courts. Judicial resources are wasted as judges in two or more jurisdictions review the same documents and at times are asked to decide the exact same motions. Worse still, if a case does not settle or consolidate in one forum, there is the possibility that two judges would apply the law differently

or otherwise reach different outcomes, which would then leave the law in a confused state and pose full faith and credit problems for all involved.").

Here, Plaintiff admits that he did not make *any* demand on WWE's Board of Directors before commencing this shareholder derivative action, and Defendants demonstrated that Plaintiff has failed to adequately plead demand futility in their motion to dismiss filed on August 28, 2020. (*See* ECF No. 59.) Accordingly, the Court should dismiss this action prior to addressing the jurisdictional issue raised by Plaintiff's motion to remand.

## II. The Court Should Deny The Motion to Remand Because It Has Federal Question Jurisdiction Over This Action.

### A. Standards for Federal Question Jurisdiction

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district" where the action is pending. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over any civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The United States Supreme Court has "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (internal citation omitted). The United States Supreme Court has held that federal question jurisdiction applies when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without

disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314 (internal quotation marks and citation omitted).

The Court determines whether it has federal question jurisdiction based on the allegations of the complaint and an examination of "whether the *substance of those allegations* raises a federal question." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 99–100 (2d Cir. 2001) (internal quotation marks and citation omitted). The artful pleading doctrine "prevents a plaintiff from avoiding [federal jurisdiction] by framing in terms of state law a complaint the real nature of [which] is federal." *NASDAQ OMX Group, Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) (internal quotation marks and citation omitted).

Federal courts "shall have exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa(a); *see also D'Alessio*, 258 F.3d at 104 (stating that "section 27 of the Exchange Act vests in federal courts exclusive jurisdiction over claims alleging violations of the securities laws"). The jurisdictional test established by the Exchange Act "is the same as the one used to decide if a case 'arises under' a federal law." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,* 136 S. Ct. 1562, 1566 (2016). Accordingly, courts may exercise federal jurisdiction over cases "in which a state-law cause of action is 'brought to enforce' a duty created by the Exchange Act because the claim's very success depends on giving effect to a federal requirement." *Id.* at 1570.

Once a case is removed, the District Court has original jurisdiction over the claim that raises a federal question and supplemental jurisdiction over any other state law claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 563 (2005) ("Once the case was removed, the District Court had original jurisdiction over the federal-law claims and supplemental jurisdiction under § 1367(a) over the state-law claims."); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983) ("[I]f either [of two claims] comes within the original jurisdiction of the federal courts, removal was proper as to the whole case."); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("A single claim over which federal-question jurisdiction exists is sufficient to allow removal.").

The Court decides whether it has subject matter jurisdiction based on the complaint at the time of removal—its jurisdiction cannot be divested based on subsequent amendments to the complaint after removal. *See F5 Capital v. Pappas*, 856 F.3d 61, 76 (2d Cir. 2017) (stating that "jurisdictional facts are assessed at the time of removal" and that post-removal events "do not deprive federal courts of subject matter jurisdiction") (internal quotation marks omitted); *Hallingby v. Hallingby,* 574 F.3d 51, 56 (2d Cir. 2009) ("[T]he existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal."); *Walker v. Bolt Tech. Corp.*, No. 3:14-CV-01406, 2014 WL 7404762, at *1 (D. Conn. Nov. 3, 2014) (stating that "[r]emoval jurisdiction is generally assessed as of the time of removal, which makes the Original Complaints the proper focus of the removal inquiry here" and that "a post-removal amendment does not defeat jurisdiction over a properly removed case"); *Gan v. Hillside Ave. Associates*, No. 01 CIV. 8457, 2001 WL 1505988, at *2 (S.D.N.Y. Nov. 26, 2001) ("Where a defendant has removed an action and the plaintiff

subsequently amends in an attempt to defeat federal jurisdiction, the presence or absence of subject matter jurisdiction is determined based on the complaint in effect at the time of removal. If subject matter jurisdiction existed at the time of removal, the Court retains subject matter jurisdiction despite subsequent amendments to the pleadings.") (internal citations omitted).

**B.** **This Action Necessarily Raises A Substantial and Disputed Federal Issue Over Which This Court May Exercise Jurisdiction.**

Under the test set forth by the United States Supreme Court in *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Where these four elements are met, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* at 258. Each of these four elements is satisfied here.

**1.** **Plaintiff's Allegations Necessarily Raise Federal Issues**

**a.** **Plaintiff's Claims Are Premised On Alleged Violations of Federal Law**

"A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016).

The Second Circuit has expressly held that state law claims that are premised on alleged violations of the federal securities laws necessarily present federal questions. *See NASDAQ*, 770 F.3d at 1021–22 (finding that action alleging state law contract and tort claims was removable because it "necessarily raises disputed issues of federal securities law"); *D'Alessio*, 258 F.3d at 101–02 ("[A]n examination of the allegations contained in the complaint establishes that

[plaintiff's] suit is rooted in violations of federal law, which favors a finding that federal question jurisdiction exists. Specifically, the gravamen of [plaintiff's] state law claims is that the NYSE and its officers conspired to violate the federal securities laws and various rules promulgated by the NYSE and failed to perform its statutory duty, *created under federal law,* to enforce its members' compliance with those laws. Thus, resolution of [plaintiff's] claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's dutie**s**, as defined under the Exchange Act and the regulations and rules thereto, in enforcing and monitoring a member's compliance with those laws.") (internal quotation marks and citation omitted).

The Complaint in this case necessarily raises a federal question because it is expressly premised on allegations that Defendants violated the federal securities laws.

**First**, Plaintiff directly alleges that Defendants violated the federal securities laws. Indeed, Plaintiff's breach of fiduciary duty claim rests entirely on allegations that Defendants violated federal securities law. *See* Compl. ¶ 156; Am. Compl. ¶ 155 ("In breach of their fiduciary duties owed to WWE, the Individual Defendants willfully or recklessly caused the Company to **violate federal regulations** by falsely stating and/or failing to disclose the Company's true business performance") (emphasis added); *see also* Pl.'s Mot. to Remand at 8–9 (claiming that the alleged violations of "**federal securities rules and regulations**" are "evidence" that Defendants "breached their fiduciary duties") (emphasis added). The federal securities laws are the only basis pled for the alleged failure by Defendants to manage the company's business and affairs in accordance with the law. Plaintiff does not identify any other laws that Defendants allegedly violated and do not claim that Defendants breached their fiduciary duties in any other way.

**Second**, Plaintiff also indirectly alleges that Defendants violated the federal securities laws, because the Complaint is premised entirely on allegations that Defendants made false and misleading statements to shareholders in SEC filings and other public disclosures for the purpose of inflating the price of WWE's securities. *See* Compl. ¶¶ 9, 90–112, 152; Am. Compl. ¶¶ 4–5, 87–110, 151 (alleging that the breach of fiduciary duty occurred by Defendants making "**materially false and misleading statements**" to the market and to shareholders in "**SEC filings and other disclosures**") (emphasis added); Compl. ¶ 157; Am. Compl. ¶ 156 (alleging that "[s]uch material misrepresentations and omissions were committed knowingly or recklessly and **for the purpose and effect of artificially inflating the price of WWE's securities**."). In other words, Plaintiff alleges that Defendants breached their fiduciary duties by causing the company to issue materially misleading and inaccurate information in violation of the federal securities laws. Such claims are directly tied to and necessarily depend upon alleged violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5. *See* 17 C.F.R. § 240.10b-5(b) (making it unlawful, "in connection with the purchase or sale of any security," to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading").

**Third**, Plaintiff alleges that Defendants' statements were false and misleading because they omitted certain material information required to be disclosed under the federal securities laws. *See* Compl. ¶ 58; Am. Compl. ¶ 57 (alleging that "the Individual Defendants had a **duty to disclose in its regulatory filings with the SEC** all events described in this Complaint that it failed to disclose so that the Company's valuation and the common stock price would be based on accurate information and to preclude deceptive practices in the market"); (emphasis added);

Compl. ¶¶ 98, 101, 108; Am. Compl. ¶¶ 96, 99, 106 (alleging that statements made by Defendants were "materially false and misleading because they failed to disclose material adverse facts about the Company's business and operations"). The scope of the duty to disclose information in this context is defined by the federal securities laws. *See Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) ("For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information"); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A]n omission is actionable under the securities laws only when the [defendant] is subject to a duty to disclose the material facts.").

**Fourth**, Plaintiff alleges that making a demand on WWE's Board of Directors was futile because the members of the Audit Committee caused the company to file false and misleading statements in violation of the federal securities laws. *See* Compl. ¶ 152; Am. Compl. ¶ 151 (alleging that the Audit Committee defendants breached their fiduciary duties because they "**allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures**") (emphasis added).

**Fifth**, Plaintiff's allegation of damages rests on his claim that Defendants violated the federal securities laws and that WWE's stock price declined when information omitted from their SEC filings and public statements was disclosed. *See* Compl. ¶¶ 10, 99–100, 115–18, 120–21; Am. Compl. ¶¶ 6, 97–98, 111–14, 116–17 (alleging that WWE's stock price declined "[w]hen the Individual Defendants' wrongful conduct came to light"). Plaintiff also seeks damages based on the costs incurred by the company in defending the federal securities lawsuit on which the instant action is based. *See* Compl. ¶¶ 11–12, 122–23, 173; Am. Compl. ¶¶ 7, 9, 118–19, 166 (alleging that "[a]s a result of the foregoing, WWE and its chief executive officer have been named as defendants in a **federal securities lawsuit** by investors who allege they

were damaged when they purchased WWE shares during the Relevant Period" and that this "**federal securities lawsuit**" has caused the company to incur "millions of dollars" in costs) (emphasis added).

Where, as here, shareholder derivative actions assert state law breach of fiduciary duty claims based on alleged violations of the federal securities laws, courts have held that they necessarily raise a federal question and have denied motions to remand such actions to state court. *See Emory on behalf of Wal-Mart Stores, Inc. v. Duke*, No. 5:12-CV-5171, 2013 WL 12284520, at *3–4 (W.D. Ark. Mar. 19, 2013) (denying motion to remand because plaintiffs' complaint "makes several substantive references to securities violations and bases their breach of fiduciary duty claim on these securities violations," including allegations that defendants breached their fiduciary duties by "permitting [the company], its directors and officers to violate foreign and federal laws" and that "the Director Defendants have breached their fiduciary duties to the Company and violated the federal securities laws") (internal quotation marks omitted); *Staehr v. W. Capital Res., Inc.*, No. CIV. 10-1806, 2010 WL 4338652, at *3 (D. Minn. Sept 24, 2010) (denying motion to remand because plaintiff alleged that defendants breached their fiduciary duties by filing a misleading and deficient proxy statement with the SEC); *Landers v. Morgan Asset Mgmt., Inc.*, No. 08-2260, 2009 WL 962689, at *7–8 (W.D. Tenn. Mar. 31, 2009) (denying motion to remand because plaintiffs "have pleaded violations of federal [securities] law as grounds for finding that Defendants were negligent and breached their fiduciary duty" and therefore "have explicitly asked the Court to evaluate Defendants' actions in light of requirements imposed by federal securities law"); *In re Goodyear Tire & Rubber Co. Derivative Litig.*, No. 5:03CV2180, 2004 WL 7330711, at *2–4 (N.D. Ohio Apr. 7, 2004) (denying motion to remand because "[a]lthough Plaintiffs do not allege, per se, federal causes of action, their

complaints make direct references to federal securities law and to Defendants' alleged violation of those laws" and "a determination of whether Defendants have violated federal law is necessary given the fact that the complaints themselves plead that the causes of action are premised, in large part, on those violations"); *Gobble v. Hellman*, No. 1:02CV0076, 2002 WL 34430286, at *2–4 (N.D. Ohio Mar. 26, 2002) (denying motion to remand because "Plaintiff has alleged that Defendants violated the Federal Exchange Act and various SEC rules and regulations, and these violations constitute a breach of their fiduciary duties" and "[w]hether or not the alleged violations may also constitute a potential cause of action under state law, the determination of whether a violation occurred is a question of federal law"); *Wietschner v. Gilmartin*, No. 02-4879, 2003 U.S. Dist. LEXIS 18997, at *7–9 (D.N.J. Jan. 14, 2003) (denying motion to remand because plaintiff's allegations supporting claim for breach of fiduciary duty "are primarily based upon defendants-directors' failure to adequately monitor [company's] financial disclosures in accordance with federal securities laws and regulations" and "plaintiff's alleged injuries depend primarily upon accusations against [the company] for violations of federal law"); *see also Austin v. Walton*, No. 4:14CV00528, 2014 WL 11510420, at *2 (E.D. Ark. Nov. 17, 2014) (denying motion to remand because plaintiff alleged in opposition to motion to dismiss that defendants committed federal securities law violations by filing false and misleading report and that demand futility was satisfied because the defendants caused the company to violate the securities laws).[5]

---

[5] Courts also have denied motions to remand shareholder derivative actions brought by plaintiffs alleging breaches of fiduciary duty based on alleged violations of other federal laws. *See also In re Capital One Derivative S'holder Litig.*, No. 1:12CV1100, 2012 WL 6725613, at *4 (E.D. Va. Dec. 21, 2012) (denying motion to remand shareholder derivative action where plaintiff alleged that defendants breached their fiduciary duty under Delaware law by allowing the bank to violate certain federal consumer protection laws); *Gamoran v. Neuberger Berman Mgmt., LLC*, No. 10 CIV. 6234 LBS, 2010 WL 4537056, at *3 (S.D.N.Y. Nov. 8, 2010) (denying motion to remand

**Sixth**, the Complaint raises a federal question because it is admittedly based on the complaints filed in the other federal lawsuits, contains allegations that are substantially identical to those in the other federal lawsuits, and asserts claims that Defendants violated the federal securities laws based on the same alleged misstatements and omissions set forth in the other federal lawsuits. *See* Compl. ¶ 138; Am. Compl. ¶ 134 (alleging that the "**securities class action**" in the Southern District of New York "seeks to hold [the defendants] liable for much of the **same wrongdoing as is alleged herein**") (emphasis added). Indeed, this Court is already presiding over the *Merholz* action—a nearly identical shareholder derivative action asserting the same state law breach of fiduciary duty, unjust enrichment, and waste claims asserted in this case. This Court necessarily will have to adjudicate the same claims in the *Merholz* action because there is no question that it has subject matter jurisdiction over that case. Accordingly, it will be far more efficient for this Court to adjudicate the claims in this action and the *Kooi* action rather than remand those actions to the state court where two other judges will have to decide the exact same issues and risk the possibility of inconsistent rulings. *See In re Goodyear Tire & Rubber Co. Derivative Litig.*, 2004 WL 7330711, at *2 ("It is important to note there are three other derivative actions pending before this Court. Although the Court has already determined that it has subject matter jurisdiction over this dispute, as outlined above, it is also of the opinion that the adjudication process will be more streamlined if Plaintiffs cases remain in federal court along with the other consolidated derivative cases. It does not make sense for two derivative actions to be remanded to state court, while three remain pending in federal court. Given that

---

shareholder derivative action where plaintiff alleged that defendants breached their fiduciary duties by allowing mutual fund to make investments in violation of both federal anti-gambling law and New York state criminal law); *Prince v. Berg*, No. C 10-4233 RS, 2011 WL 9103, at *2 (N.D. Cal. June 3, 2011) (denying motion to remand shareholder derivative action where plaintiff alleged that defendants caused company to violate False Claims Act).

these cases involve the same parties, the same facts, and will require resolution of the same law, it is prudent that the cases remain consolidated and decided together. Keeping all of these actions together will result in more efficient and less costly litigation."); *Landers*, 2009 WL 962689, at *9 ("Because federal securities actions that raise the same theory are currently pending in federal court, there is also a substantial risk of inconsistent adjudications.").

**b.      Plaintiff's Arguments For Remand Are Unavailing**

Plaintiff's arguments that this case should be remanded to state court because it does not raise a federal question rely on wholly inapposite case law and should be rejected.

Plaintiff's reliance on Judge Arterton's decision in *Comm'n on Human Rights & Opportunities ex rel. Nammack v. 445 W. Putnam, LLC*, No. 3:19CV1767, 2020 WL 64299 (D. Conn. Jan 7, 2020) is misplaced. In that case, the plaintiff brought a claim alleging that the defendant violated Connecticut's fair housing laws. *Id.* at *1. The defendant removed the case based on the argument that Connecticut courts often consider federal interpretations of analogous federal housing laws in deciding such claims. *Id.* The Court remanded the case because the complaint did not allege any violations of federal law, and the Court was not obligated to consider federal law in evaluating the plaintiff's state law claim. *Id.* at *2–3. By contrast, Plaintiff in this case expressly pleads that Defendants violated federal law, and such allegations form the basis for his breach of fiduciary duty claim.

Plaintiff's reliance on non-binding trial court decisions from other jurisdictions in which courts have remanded shareholder derivative actions where the complaints were premised on different allegations is likewise misplaced. Such cases are readily distinguishable because the plaintiffs in those cases either (1) did not allege that the defendants breached their fiduciary duties by violating federal securities laws or (2) based their breach of fiduciary duty claims on other theories that were not dependent on federal law. *See Randolph v. Forsee*, No. 10-2445,

2010 WL 5148293, at *5–6 (D. Kan. Dec. 13, 2010) (remanding case because the plaintiff's complaint asserted "other theories of [] state law claims that do not reference federal law" and "the violation of federal securities law is by no means the only, or even the primary legal or factual issue in this case, nor do the state law claims turn on the meaning of federal securities laws or regulations"); *Flynn ex rel. Moody's Corp. v. McDaniel*, 689 F. Supp. 2d 686 (S.D.N.Y. 2010) (remanding case because plaintiffs did not plead that their breach of fiduciary duty claim was based on violations of the federal securities laws or rely solely on allegedly false and misleading statements in violation of the federal securities laws to support of their claim); *Ekas v. Burris*, No. 07-61156-CIV, 2007 WL 4055630, at *3–4 (S.D. Fla. Nov. 14, 2007) (remanding case involving alleged violations of GAAP in connection with stock options backdating claim because complaint did not "expressly allege any violations of federal securities law" and "the duty to comply with federal laws was one of many duties that were allegedly breached by [the d]efendants"); *Fagin v. Gilmartin*, No. CIV A 03-2631, 2007 WL 419286, at *4–5 (D.N.J. Feb. 1, 2007) (remanding case because plaintiff alleged that making false SEC filings was only "one component of the alleged wrongdoing" and "one of many charged consequences of the Defendants' mismanagement"); *Sung ex rel. Lazard Ltd. v. Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006) (remanding case because "in no count in [plaintiff's] complaint does an alleged violation of federal securities law form the only basis for the alleged violation of state law" and "[n]o cause of action here necessarily stands or falls based on a particular interpretation or application of federal law"); *Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d 1088, 1094–96 (D. Colo. 2000) (remanding case because "Plaintiffs' mention of 'insider trading' is only one item in this list [of actions by which Defendants were unjustly enriched], and it is mentioned virtually as an afterthought").

Plaintiff's reliance on decisions remanding shareholder derivative claims that were removed on the basis of the Securities Litigation Uniform Standards Act ("SLUSA") are also inapposite, because Defendants did not premise removal of this action on SLUSA. *See Arlia ex rel. Massey Energy Co. v. Blankenship*, 234 F. Supp. 2d 606, 607–608 (S.D. W. Va. 2002) (remanding shareholder derivative action asserting insider trading claims because exclusively derivative actions are not covered class actions removable under SLUSA); *Sung*, 415 F. Supp. 2d at 408 (remanding shareholder derivative action because it was "beyond SLUSA's preemptive scope" and "not removable pursuant to SLUSA"). Rather, Defendants premised removal of this action based on the presence of a substantial federal question. *See Landers*, 2009 WL 962689, at *11 (distinguishing decisions remanding cases removed based on SLUSA).

Nor would exercising jurisdiction over this action "deprive plaintiffs of their right to file in state court[,]" Pl.'s Mot. to Remand at 1, because Plaintiff has chosen to base his state law claims on alleged violations of the federal securities laws. *See Landers*, 2009 WL 962689, at *6 ("Plaintiffs are masters of their complaint and have chosen to rely on violations of federal law, implicitly or explicitly, to establish violations of state law. Plaintiffs recite violations of federal statutes not only in their factual allegations, but also in stating their claims. Even where the Plaintiffs do not explicitly refer to violations of federal law, they allude to duties created by federal law as a basis for their state law causes of action."); *Gobble*, 2002 WL 34430286, at *3 (rejecting plaintiff's argument that "it may choose to avoid federal jurisdiction by relying exclusively on state law" because "[p]laintiff did not craft its complaint in such a way that it relied only on state law" but rather "explicitly cited alleged violations of federal law as the basis for its breach of fiduciary duty and abuse of control claims").

Finally, Plaintiff's argument that "references to federal securities regulations" are

insufficient to establish jurisdiction and that the alleged violations of the federal securities laws merely provide "evidence" in support of his breach of fiduciary duty claim is similarly unavailing, because his breach of fiduciary duty claim is expressly premised on establishing such violations. Pl.'s Mot. to Remand at 8, 10. *See In re Goodyear Tire & Rubber Co. Derivative Litig.*, No. 03CV2180, 2004 WL 7330711, at *2 ("[Plaintiffs] are mistaken that their claims include 'only passing references' to federal law. Although Plaintiffs may see their references to violations of federal law as mere 'support' for their state law claims, a determination of whether Defendants have violated federal law is necessary given the fact that the complaints themselves plead that the causes of action are premised, in large part, on those violations."); *Emory on behalf of Wal-Mart Stores, Inc.*, 2013 WL 12284520, at *3 (rejecting plaintiff's argument that it just made "passing references" to federal securities laws where plaintiff's breach of fiduciary duty claim expressly alleged the defendants violated federal securities laws and requested a judgment to that effect); *Gobble*, 2002 WL 34430286, at *2 (stating that "Plaintiffs claim that 'there are only two passing references to federal securities laws' within the Complaint" is "a misrepresentation of the substance of the complaint" because "[a]lthough there may only be two places where the actual words 'federal securities laws' appear, the Complaint makes several direct references to federal securities laws and to Defendants' alleged violations of those laws").

### 2.    The Federal Issues Are Disputed

The second factor also favors removal: Defendants' alleged violations of the federal securities laws are central to Plaintiff's claims, both as to the merits and to the allegations regarding demand futility, and there is no question that Defendants vigorously dispute them. *See New York ex rel. Jacobson.*, 824 F.3d at 316 (stating that the "'actually disputed' factor is satisfied when the federal issue is a "central" point in dispute).

### 3. The Federal Issues Are Substantial

The third factor favors removal because the federal questions raised by this action are substantial. A federal question is "substantial" if it implicates "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.

**First**, there is a substantial federal interest in the regulation of securities markets and in addressing alleged violations of the securities laws. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006) ("The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated."); *D'Alessio*, 258 F.3d at 100 (stating that the "interpretation and application of the federal securities laws" and related statutory and regulatory requirements are "areas of undisputed strong federal interest"). Indeed, Congress has determined that compliance with duties or obligations created under the federal securities laws and related liability for making false or misleading statements in connection with the purchase or sale of securities under the Exchange Act are important federal interests that should be vindicated exclusively in federal courts. *See* 15 U.S.C. § 78aa(a) (providing federal courts with "exclusive jurisdiction of violations of [Exchange Act] or the rules and regulations thereunder" and all actions "brought to enforce any liability or duty created by [Exchange Act] or the rules and regulations thereunder"); *Gobble*, 2002 WL 34430286, at *3–4 ("[I]nterpreting the Exchange Act and the rules and regulations promulgated thereunder is a matter of substantial federal concern and where a plaintiff's claims, however labeled, require such an interpretation, those claims are properly removed to federal court for disposition.").

**Second**, the federal question in this case is substantial because it plays a central role in the resolution of Plaintiff's state law claims. Plaintiff's allegations of liability are premised on their claim that "the Individual Defendants willfully or recklessly caused the Company to violate **federal regulations**." Compl. ¶ 156 (emphasis added); Am. Compl. ¶ 155 (emphasis added); Pl.'s Mot. to Remand at 8 (claiming that the alleged violations of "**federal securities rules and regulations**" are "evidence" that Defendants "breached their fiduciary duties") (emphasis added). The *only* laws and regulations invoked by the Complaint are the federal securities laws, and the alleged damages relate entirely to failures to disclose information in SEC filings and public disclosures—issues addressed by Section 10(b) and Rule 10b-5 of the Exchange Act. *See D'Alessio*, 258 F.3d at 102 ("[B]ecause the [defendant's] alleged violations of the federal securities laws and its improper interpretation of those laws underlie [plaintiff's] state law claims, the federal issue is substantial.").

**Third**, the federal question in this case is substantial because the same question is presented by the federal securities lawsuit pending in the Southern District of New York and the *Merholz* shareholder derivative lawsuit pending in this Court. The allegations made by Plaintiff in this case and the *Kooi* case mirror the allegations made in support of the claims in the other federal cases. The claims in all of these cases depend on whether Defendants made false and misleading statements in violation of the federal securities laws. A determination that Defendants did not violate the federal securities laws will be dispositive in this case because Plaintiff's breach of fiduciary duty claim is entirely premised on those alleged violations. *See In re Capital One Derivative S'holder Litig.*, 2012 WL 6725613, at *6 ("The questions of federal law may be dispositive here, as a finding that no federal violations occurred would end the matter. And while a finding that federal laws were violated would not assure a plaintiffs'

victory, plaintiffs certainly cannot prevail in the absence of such a finding. In sum, there is no doubt that the federal questions are substantial in terms of the role they play in this case.").

### 4. The Federal Forum May Entertain This Case

The fourth factor also favors removal because this federal forum may entertain this case without disturbing any congressionally-approved balance of federal and state judicial responsibilities. *See New York ex rel. Jacobson*, 824 F.3d at 316 (stating that whether "the exercise of federal-question jurisdiction over a state law claim not disturb any congressionally approved balance of state and federal judicial responsibilities, focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected. Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court.").

**First**, litigation of this action in a federal forum is consistent with the congressionally approved division of labor between federal and state courts because Congress has expressly determined that claims of securities laws violations and actions brought to enforce any liability or duty created by the Exchange Act should be heard exclusively in federal court. *See* 15 U.S.C. § 78aa(a) (conferring exclusive jurisdiction over claims alleging violations of the Exchange Act on federal courts); *NASDAQ*, 770 F.3d at 1030 ("Far from threatening the federal-state balance envisioned by Congress in this area, the exercise of federal jurisdiction here comports with Congress's expressed preference for alleged violations of the Exchange Act, and of rules and regulations promulgated thereunder, to be litigated in a federal forum."); *Landers*, 2009 WL 962689, at *9–10 ("[E]xercising federal jurisdiction in this case would not disturb the Congressionally-approved balance of judicial responsibilities" because "[i]n the area of federal

securities law, Congress has specified the federal-state balance of responsibilities by statute" by vesting "federal courts with exclusive jurisdiction over violations of the [Exchange Act]."").

**Second**, federal courts routinely handle shareholder derivative actions—particularly where the claims relate to violations of the federal securities laws—such that removal of this case will not upset any balance of interests between federal and state courts. *See In re Capital One Derivative S'holder Litig.*, 2012 WL 6725613, at *7–8 (stating that "shareholder derivative actions that depend on the resolution of a substantial, disputed question of federal law" are a "class of cases to which the door to federal court has long been open"). Indeed, the *Merholz* action is based on the same claims and allegations, is already pending before this Court, and will have to be decided by this Court. There is a substantial risk of inconsistent adjudications if this case and the *Kooi* case are remanded to state court because the same issues will be decided in the pending federal cases. Accordingly, the federal interest will be undermined by remanding this case while others asserting the same claims remain in federal court. *See Landers*, 2009 WL 962689, at *8–9 ("Because federal securities actions that raise the same theory are currently pending in federal court, there is also a substantial risk of inconsistent adjudications. Therefore, the fourth consideration also suggests that the Court should exercise jurisdiction.").

Accordingly, this action was properly removed because this Court has subject matter jurisdiction over this case due to the presence of a substantial and disputed federal question.

**III. Even If This Action Does Not Raise A Federal Question, This Court Has Supplemental Jurisdiction Because It Is Related To The *Merholz* Action**

**A. Standards for Supplemental Jurisdiction Over Related Actions**

Section 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are

so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The Second Circuit has held that the existence of subject matter jurisdiction in one action can "provide supplemental jurisdiction over claims in a related action." *Actman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). "[D]isputes are part of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'" *Id.* "In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court.'" *Id.* (ellipses omitted).

A district court may exercise supplemental jurisdiction over a separate, but related, action even if it does not raise a federal question. *See In re September 11 Litig.*, 906 F. Supp. 2d 295, 302 (S.D.N.Y. 2012) ("Because substantial overlap exists, the exercise of supplemental jurisdiction over this action is appropriate. That the jurisdiction-providing federal claims are not in this action (but in related actions) does not change this conclusion."); *Megibow v. Hagen*, No. 09 Civ. 10578, 2010 WL 304541, at *1 (S.D.N.Y. Jan. 26, 2010) ("Neither the prior dismissal of Plaintiff's ERISA suit, nor the institution of this suit as a distinct action, prevents this court from exercising supplemental jurisdiction.").

### B.     The Court Has Supplemental Jurisdiction Over This Action

This Court has supplemental jurisdiction over this action and the *Kooi* action under section 1367 because they are closely related to the earlier filed *Merholz* action over which it unquestionably has subject matter jurisdiction. All three actions action share a "common nucleus of operative fact" because the facts underlying them substantially overlap. *See* Pl. Mot. to

-34-

Remand at 8 (admitting that "this Action may have a common nucleus of operation [sic] fact of the Federal Securities Action and two other derivative lawsuits").

All three actions are nearly identical shareholder derivative lawsuits. The plaintiffs in each case are WWE shareholders who brought claims derivatively on behalf of the corporation. Defendants in each case are current or former WWE officers and directors. After the *Kooi* action and this action were filed, they were transferred to this Court because they are related to the pending *Merholz* action. All three cases assert essentially the same claims against the same Defendants based on the same factual allegations largely copied from the federal securities class action complaints. Specifically:

- Each complaint alleges that the same statements made by Defendants in SEC filings and other public disclosures concerning negotiation of a media rights deal in the Middle East and related financial projections were false and misleading. *See Merholz* Compl. ¶¶ 8, 50–66; *Merholz* Am. Compl. ¶¶ 121–190; *Merholz* Second Am. Compl. ¶¶ 95–146; *Kooi* Compl. ¶¶ 5–10, 49–65; *Kooi* Am. Compl. ¶¶ 47–74; *Nordstrom* Compl. ¶¶ 90–121; *Nordstrom* Am. Compl. ¶¶ 87–117.

- Each complaint alleges that Defendants violated the federal securities laws, rules, and regulations and asserts the same claims—breach of fiduciary duties and unjust enrichment (and waste in this case and the *Merholz* case). *See Merholz* Compl. ¶¶ 99–129; *Merholz* Am. Compl. ¶¶ 262–292; *Merholz* Second Am. Compl. ¶¶ 216–246; *Kooi* Compl. ¶¶ 75–83; *Kooi* Am. Compl. ¶¶ 93–102; *Nordstrom* Compl. ¶¶ 153–164; *Nordstrom* Am. Compl. ¶¶ 152–168.

- Each complaint asserts the same theory of damages—that WWE's stock price was artificially inflated and then declined after the information that Defendants allegedly failed to disclose was revealed to the public. *See Merholz* Compl. ¶¶ 11–12; *Merholz* Am. Compl. ¶¶ 145, 169, 182, 190, 267, 292; *Merholz* Second Am. Compl. ¶¶ 94, 116, 125, 129, 138, 146; *Kooi* Compl. ¶¶ 10–11; *Kooi* Am. Compl. ¶¶ 12, 14, 95; *Nordstrom* Compl. ¶¶ 10, 100, 116, 118, 121; *Nordstrom* Am. Compl. ¶¶ 6, 98, 112, 114, 117.

- Each complaint alleges that the plaintiffs failed to make the required demand on WWE's board of directors based on similar and wholly insufficient allegations that such a demand would have been futile. *See Merholz* Compl. ¶¶ 82–98; *Merholz* Am. Compl. ¶¶ 225–261; *Merholz* Second Am. Compl. ¶¶ 179–215; *Kooi* Compl. ¶¶ 67–74; *Kooi* Am. Compl. ¶¶ 81–92; *Nordstrom* Compl. ¶¶ 126–152; *Nordstrom* Am. Compl. ¶¶ 122–151.

Moreover, adjudication of both actions by the same Court would serve the interests of judicial economy and efficiency, conserve judicial resources, reduce the burdens on the parties and the witnesses, and avoid the risk of inconsistent results.

Given the substantial overlap between this action and the *Merholz* action, this Court could exercise supplemental jurisdiction over this action even if it did not raise a federal question, which it does in any event. *See Actman*, 464 F.3d at 336 (holding that district court properly exercised supplemental jurisdiction over legal malpractice action under state law because it was related to the law firm's representation of the plaintiffs in a federal securities class action); *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (holding that district court properly exercised supplemental jurisdiction over breach of contract dispute involving attorneys' fees because it was related to a wrongful death action over which the federal court had subject matter jurisdiction); *Watson Pharmaceuticals, Inc. v. Bayer Pharma AG*, No. 12 CIV. 6089, 2013 WL 5477498, at *3–5 (S.D.N.Y. Sept. 30, 2013) (exercising supplemental jurisdiction over a state law malicious prosecution action that was related to a separate federal court patent infringement action); *In re September 11 Litig.*, 906 F. Supp. 2d at 300–02 (exercising supplemental jurisdiction over declaratory judgment action under state law because it was related to tort claims in a separate action over which the federal court had jurisdiction); *Megibow*, 2010 WL 304541, at *1 (exercising supplemental jurisdiction over state law breach of contract action because it was related to a prior federal court action that arose under ERISA); *Black v. Pitney Bowes, Inc.*, No. 05 CIV 108, 2008 WL 3992306, at *2 n.3 (S.D.N.Y. Aug. 26, 2008) ("While the action for STD benefits does not present a federal question, and the amount in controversy is insufficient to sustain diversity jurisdiction, this Court has supplemental jurisdiction over the STD claim because it and the ERISA claim arise from a 'common nucleus

of fact.'"); *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 399 F. Supp. 2d 340, 355–56 (S.D.N.Y. 2005) (upholding removal of state court action and exercising supplemental jurisdiction over the action because the claims were similar to the claims in cases pending in federal court, retaining jurisdiction would promote judicial economy and prevent inconsistent judgments, and there were no compelling reasons to decline jurisdiction).

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand this action to the Connecticut Superior Court should be denied.

DEFENDANTS VINCENT K. MCMAHON,
GEORGE A. BARRIOS, MICHELLE D.
WILSON, STEPHANIE MCMAHON, PAUL
LEVESQUE, FRANK A. RIDDICK III,
STUART U. GOLDFARB, LAUREEN ONG,
ROBYN W. PETERSON, MAN JIT SINGH,
JEFFREY R. SPEED, ALAN M. WEXLER,
PATRICIA A. GOTTESMAN, and NOMINAL
DEFENDANT WORLD WRESTLING
ENTERTAINMENT, INC.,

By: */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-0100
Fax: (860) 275-0343
Email: jmueller@daypitney.com

Theodore V. Wells, Jr. *(pro hac vice)*
Daniel J. Kramer *(pro hac vice)*
Richard C. Tarlowe *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
Fax: (212) 757-3990
Email: twells@paulweiss.com
Email: dkramer@paulweiss.com
Email: rtarlowe@paulweiss.com

Justin Anderson *(pro hac vice)*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Phone: (202) 223-7300
Email: janderson@paulweiss.com

Jerry S. McDevitt *(pro hac vice)*
Curtis B. Krasik *(pro hac vice)*
K&L GATES LLP
K&L Gates Center

210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com

Stephen G. Topetzes (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
Phone: (202) 778-9000
Fax: (202) 778-9100
Email: stephen.topetzes@klgates.com
Email: ted.kornobis@klgates.com

## CERTIFICATION OF SERVICE

      I hereby certify that, on September 18, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                 */s/ Jeffrey P. Mueller*
                                   Jeffrey P. Mueller (ct27870)