**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00557-VAB |
| Plaintiffs, | |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-CV-00743-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. | |
| [Caption Continued on Next Page] | |

BARRIOS, and MICHELLE D. WILSON,

                         Defendants,

      -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                      Nominal Defendant.

---

RODNEY NORDSTROM, Derivatively on Behalf of
WORLD WRESTLING ENTERTAINMENT,
INC.,

                    Plaintiff,

      v.

VINCENT K. MCMAHON, GEORGE A.
BARRIOS, MICHELLE D. WILSON,
STEPHANIE MCMAHON, PAUL LEVESQUE,
FRANK A. RIDDICK III, STUART U.
GOLDFARB, LAUREEN ONG, ROBYN W.
PETERSON, MAN JIT SINGH, JEFFREY R.
SPEED, ALAN M. WEXLER, and PATRICIA A.
GOTTESMAN,

                    Defendants,

      -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                    Nominal Defendant.

Case No. 3:20-CV-00904-VAB

**MEMORANDUM IN SUPPORT OF DENNIS PALKON'S MOTION FOR PERMISSIVE
INTERVENTION, APPOINTMENT OF LEAD COUNSEL, AND DENIAL OF
<u>DEFENDANTS' MOTIONS TO DISMISS AS MOOT</u>**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................1

II.    FACTUAL BACKGROUND ....................................................................................4

       A.    The Company Conceals Dire Threats to Its MENA Operations.............................4

       B.    Procedural History .....................................................................................6

             1.    The Pending Cases Rest on Public Materials Alone....................................6

             2.    Proposed Intervenor's Case Rests on Books and Records.........................7

III.   ARGUMENT ........................................................................................................9

       A.    The Court Should Allow Proposed Intervenor to Intervene ...................................9

             1.    Proposed Intervenor's Claims Share Numerous Common
                   Questions of Law and Fact with the Actions ................................................9

             2.    Proposed Intervenor's Motion Is Timely and Would Impose No
                   Undue Delay or Prejudice in the Adjudication of the Original
                   Parties' Rights ..........................................................................................10

       B.    Proposed Intervenor, WWE, and WWE's Stockholders Will Be Prejudiced
             if the Court Denies Intervention ..........................................................................13

       C.    The Proposed Intervenor's Complaint Is Materially Superior..............................16

       D.    The Relief Proposed Intervenor Seeks Is Carefully Crafted to Avoid Any
             Undue Imposition on the Court's Exercise of Jurisdiction and
             Management of Its Calendar ...............................................................................18

IV.    CONCLUSION ...................................................................................................199

## **TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE(S)**

*Asbestos Workers Local 42Pension Fund v. Bammann*,
    No. 9772-VCG, 2015 WL 2455469 (Del. Ch. May 21, 2015),
    *as revised* (May 22, 2015) ...............................................................................15

*Assoc. of Conn. Lobbyists LLC v. Garfield*,
    241 F.R.D. 100 (D. Conn. 2007)...................................................................9, 10

*AT&T Corp. v. Sprint Corp.*,
    407 F.3d 560 (2d Cir. 2005).........................................................................9, 10

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993).................................................................................12

*Brehm v. Eisner*,
    746 A. 2d 244 (Del. 2000) .............................................................................1, 12

*Cal. State Teachers' Ret. Sys. v. Alvarez*,
    175 A.3d 86 (Del. 2017), No. 7455-CB,
    2017 WL 6421389 (Del. Jan. 18, 2017)....................................................4, 13, 18

*Cal. State Teachers' Ret. Sys. v. Alvarez*,
    179 A.3d 824 (Del. 2018) .............................................................................14, 15

*Conte v. Justice*,
    996 F.2d 1398 (2d Cir. 1993)...........................................................................14

*Fuchs Family Tr. v. Parker Drilling Co.*,
    No. CV 9986-VCN, 2015 WL 1036106 (Del. Ch. Mar. 4, 2015) ....................15

*In re Wal-Mart Stores, Inc. Del. Derivative Litig.*,
    No. CV 7455-CB, 2016 WL 2908344 (Del. Ch. May 13, 2016),
    *supplemented*, 167 A.3d 513, 515 (Del. Ch. 2017)..........................................15

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    315 F.R.D. 169 (S.D.N.Y. 2016) .....................................................................10

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991)..............................................................................................3

*King v. VeriFone Holdings, Inc.*,
    12 A.3d 1140 (Del. 2011) ...............................................................................2, 15

*La. Mun. Police Emps.' Ret. Sys. v. Pyott*,
    46 A.3d 313 (Del. Ch. 2012), *judgment rev'd* 74 A.3d 612 (Del. 2013)..........12

*Levine v. Smith*,
  591 A.2d 194 (Del. 1991) ........................................................................12

*Marvel Characters, Inc. v. Simon*,
  310 F.3d 280 (2d. Cir. 2002)...................................................................14

*Pyott v. La. Mun. Police Employees' Ret. Sys.*,
  74 A.3d 612 (Del. 2013) ....................................................................13, 15

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) ..................................................................10, 16

*Respler v. Evans*,
  17 F. Supp. 3d 418 (D. Del. 2014)..........................................................15

*Ross v. Bernhard*,
  396 U.S. 531 (1970)..................................................................................12

*Ruiz v. Estelle*,
  161 F.3d 814 (5th Cir. 1998) ...................................................................10

*Ryan v. Gifford*,
  918 A.2d 341 (Del. Ch. 2007)....................................................................7

*Schaghticoke Tribal Nation v. Norton*,
  No. 3:06cv81(PCD), 2006 WL 1752384 (D. Conn. June 14, 2006) .................10

*South v. Baker*,
  62 A.3d 1 (Del. Ch. 2012)...........................................................................2

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) .................................................................12

*Tansey v. Rogers*,
  No. 12-1049-RGA, 2016 WL 3519887 (D. Del. June 27, 2016)......................12

*U.S.P.S. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978).....................................................................10

*Utah Ass'n of Ctys. v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) ...............................................................10

*White v. Panic*,
  783 A.2d 543 (Del. 2001) ...........................................................................2

## STATUTES, RULES & OTHER AUTHORITIES

Fed. R. Civ. P. 23.1 .......................................................................................1

Fed. R. Civ. P. 24(b)(1)(B), (b)(3) .................................................................................................. 9

Fed. R. Civ. P. 24(b)(3) ................................................................................................................. 10

Dennis Palkon ("Proposed Intervenor"), by and through his undersigned counsel, respectfully submits this Memorandum in support of his Motion for Permissive Intervention (the "Motion") in the above-captioned stockholder derivative actions (collectively, the "Actions") pursuant to Rule 24 of the Federal Rules of Procedure ("Rule 24").  Proposed Intervenor seeks to intervene to request: (i) appointment of his counsel as lead counsel; (ii) designation of the Proposed Complaint in Intervention as the operative complaint; and (iii) that the Court deny as moot Defendants'[1] pending motions to dismiss in light of the new operative complaint.

## I.    PRELIMINARY STATEMENT

These stockholder derivative Actions—which allege breach of fiduciary duty claims in connection with insiders misleading the public and selling hundreds of millions of dollars' worth of their personally held WWE stock—are governed by Delaware law.  This case involves a very large potential recovery for WWE and raises important issues about the conduct of a controlling stockholder and his controlled board.  While Defendants dragged their feet to produce documents responsive to Proposed Intervenor's books and records demand pursuant to 8 *Del. C.* § 220 ("Section 220"), they have worked expeditiously to file motions to dismiss here.

Defendants' alacrity here and delay in providing the Section 220 documents is no surprise. When, as here, a stockholder seeks to pursue a claim belonging in the first instance to the corporation itself, that stockholder must be prepared to plead with particularity the basis on which demand on the board of that company is excused.  *See* Fed. R. Civ. P. 23.1; *Brehm v. Eisner*, 746 A. 2d 244, 254-55 (Del. 2000) ("Chancery Rule 23.1 requires, in part, that the plaintiff must allege

---

[1] Defendants Vincent K. McMahon, Stephanie McMahon, Paul Levesque, Frank A. Riddick III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler, George A. Barrios, Michelle D. Wilson, and Patricia A. Gottesman are referred to herein as the "Individual Defendants," and with nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company"), are collectively referred to herein as the "Defendants."

with particularity facts raising a reasonable doubt that the corporate action being questioned was properly the product of business judgment."). In order to meet these demanding pleading standards, the Delaware Supreme Court has for decades instructed plaintiff stockholders to use the "tools at hand," including the right to obtain corporate books and records pursuant to Section 220, before precipitously shooting off a breach of fiduciary duty complaint. *See, e.g.*, *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011) ("Delaware courts have strongly encouraged stockholder-plaintiffs to utilize Section 220 ***before filing a derivative action***, in order to satisfy the heightened demand futility pleading requirements of [the analogous] Court of Chancery Rule 23.1."); *see also South v. Baker*, 62 A.3d 1, 6 (Del. Ch. 2012) (in dismissing action for failure to plead demand futility, the court noted that "***our Supreme Court has admonished stockholders repeatedly to use Section 220***..., to obtain books and records and investigate their claims before filing suit"); *White v. Panic*, 783 A.2d 543, 557 (Del. 2001) (holding that a "pre-suit investigation in this case may have yielded the particularized facts required to show that demand is excused").[2]

Proposed Intervenor is a large, longtime WWE stockholder that heeded the Delaware Supreme Court's instructions to inspect WWE's internal books and records pursuant to Section 220 ***before*** filing a plenary action. Now that Proposed Intervenor has the Company's internal books and records (the "Section 220 Documents"), the reasons for the Company's delay is obvious.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[2] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

███████████████████████████████████████████████████

████████████████████████ All of the above is spelled out in detail in the Proposed Complaint in Intervention (the "Proposed Complaint"), attached as Ex. A to the Declaration of William H. Narwold in support of Proposed Intervenor's Motion ("Narwold Decl.").

In contrast, plaintiffs Ryan Merholz ("Merholz"), Melvyn Klein ("Klein"), Daniel Kooi ("Kooi"), and Rodney Nordstrom ("Nordstrom") (collectively, "Plaintiffs") did not employ the "tools at hand," despite the Delaware Supreme Court's unambiguous command.  As a result, their complaints rest exclusively on publicly available information and lack the detailed information uncovered by Proposed Intervenor.  The Company and its minority stockholders should not see their valuable claims risked because Plaintiffs failed to follow Delaware's instructions.

The election by Plaintiffs here to plead demand futility under Delaware's challenging substantive standards—without the benefit of ***any*** of the Company's books and records—unnecessarily jeopardizes WWE's viable derivative claims.[3]  Unless Proposed Intervenor is allowed to intervene, and the Defendants' motions to dismiss denied as moot, Plaintiffs' decision to file the Actions, without first developing the factual predicate through a careful review of WWE's books and records, will preclude a more diligent and better informed stockholder from pursuing the valuable Delaware state law claims at issue.  This outcome would severely prejudice WWE, the real party in interest in this derivative proceeding, as well as the Company's minority stockholders.

---

[3] WWE is incorporated under the laws of Delaware and, therefore, Delaware's substantive law supplies the standard for pleading demand futility.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 92 (1991) (holding that an allegation of demand futility is a matter of substantive state law).  Moreover, Rule 23.1 of the Federal Rules of Civil Procedure requires that the facts alleged in support of demand futility be pled with particularity.

Recognizing the challenge of pleading demand futility without first obtaining board deliberations and other relevant internal documents, the Delaware Supreme Court has also instructed stockholder plaintiffs to move to intervene where, as here, a derivative action is filed in the absence of a corporate books and records investigation, so as to avoid extinguishment of those claims by operation of *res judicata*. *See, e.g.*, *Cal. State Teachers' Ret. Sys. v. Alvarez*, No. 7455-CB, 2017 WL 6421389, at *4 (Del. Jan. 18, 2017) ("*Wal-Mart Remand Order*") (holding that to preserve claims a stockholder must move to intervene to "ensure that the rendering court would take into account the litigation pending elsewhere and make a determination as to whether any dismissal should be with or without prejudice, and as to the named plaintiff only, and what provision, if any, should be made to protect the interests of the other shareholders litigating in other fora").

Accordingly, Proposed Intervenor seeks to intervene so that he may pursue the Actions based on the more thoroughly researched Proposed Complaint containing particularized allegations against the Company's current and former officers and directors for breaches of fiduciary duty and unjust enrichment. A complaint filed with the benefit of this nonpublic information would be in the best interests of the true parties in interest—WWE and its minority stockholders.

In the alternative, Proposed Intervenor respectfully requests that any order of dismissal entered by the Court be with prejudice ***only*** to Plaintiffs, and not as to other WWE stockholders.

## II.      FACTUAL BACKGROUND

### A.      The Company Conceals Dire Threats to Its MENA Operations

Proposed Intervenor's and all of the Plaintiffs' actions concern the Defendants' statements about the Company's dealings with Orbit Showcase Network ("OSN"), WWE's attempts to secure

a new media distribution rights deal, and its vital business in the Middle East and North Africa region ("MENA").

The Company had entered into two relevant agreements in the MENA region. A five-year arrangement with OSN, a Kuwaiti-controlled direct-broadcast satellite provider, gave OSN exclusive rights of WWE's content for its region. In addition, WWE entered into a ten-year partnership with the Ministry of Sports of Saudi Arabia (a Saudi government body previously known as, and referenced herein, as the "General Sports Authority") to host live events in Saudi Arabia. The OSN deal was set to expire at the end of 2019.

In November 2018, OSN told WWE that it would terminate their relationship, as OSN was closing its sports channels. The parties thereafter negotiated a separation agreement, signed on December 18, 2018 and effective as of March 31, 2019. At this point in time, WWE lacked a distribution rights agreement for the crucial and growing MENA market. But it did not disclose this information publicly. At the end of November 2018, WWE controller, defendant Vincent K. McMahon, sold nearly $23 million worth of his personally held WWE stock.

Throughout 2019 and into 2020, while aware of the materially negative fact of WWE's loss of its valuable OSN agreement, certain of the Individual Defendants sold over $313 million in WWE stock at inflated prices. Moreover, in an effort to offload their own shares without tipping off other WWE stockholders, certain of the Individual Defendants made false and misleading statements concerning WWE's ability to expand its operations in the MENA region and "renew" the crucial media rights distribution deal, both of which were necessary for the Company to meet its financial guidance. To do so, they falsely represented that the Company had continued to bolster its relationship with Saudi Arabia and was making significant progress on building the WWE brand in the Middle East.

While making false public statements, Defendants also concealed that: (i) WWE was experiencing rising tensions with the Saudi government; (ii) the Saudi government and its affiliates had failed to make millions of dollars in payments it owed to the Company; (iii) OSN and WWE reached an agreement to terminate OSN's media rights distribution agreement with WWE in December 2018, effective March 31, 2019; (iv) WWE had failed in its efforts to enter into a replacement media rights arrangement for the Middle East and thus was operating without a source of material revenue; and (v) based on the foregoing, WWE did not have the ability to expand its operations in the MENA region or within Saudi Arabia.

While Defendants were making false and misleading statements that artificially inflated the price of WWE's stock price, certain of the Individual Defendants sold over $313 million of their stock.

## B.    Procedural History

### 1.    The Pending Cases Rest on Public Materials Alone[4]

Plaintiffs initiated the Actions without the benefit of any inspection of WWE's books and records pursuant to Section 220.  (Merholz and Klein, Kooi, and Nordstrom, ECF Nos. 1, respectively.)  While each of the Plaintiffs amended their respective complaints at least once, they did so again without the benefit of any of WWE's internal book and records.  (Merholz and Klein, ECF Nos. 7 and 39; Kooi, ECF No. 36; Nordstrom, ECF No. 45).  On August 28, 2020, Defendants moved to dismiss with prejudice Plaintiffs' state and federal claims under Rule 23.1 (demand futility) and Rule 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure. (Merholz and Klein, ECF No. 57; Kooi, ECF No. 67; Nordstrom, ECF No. 59).  The Court has

---

[4] "Merholz and Klein" refers to *Merholz, et. al. v. McMahon et al.*, 20-cv-557.  "Kooi" refers to *Kooi v. McMahon et. al.*, 20-cv-743. "Nordstrom" refers to *Nordstrom v. McMahon et. al.*, 20-cv-904.

scheduled a hearing on the motions to dismiss for October 29, 2020.

Plaintiffs' amended complaints posit that demand is futile because a majority of WWE's Board of Directors (the "Board") face a substantial likelihood of liability on the underlying claims and/or are not independent from other Board members who face liability.[5]  Defendants attempt to rebut this argument by pointing to the lack of allegations regarding Board members' knowledge of the true facts.  *See* Reply Memorandum in Support of Defendants' Motion to Dismiss ("MTD Reply") at 2-7, Merholz and Klein, ECF No. 63; Kooi, ECF No. 76; Nordstrom, ECF No. 66.  ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████[6]

### 2.    Proposed Intervenor's Case Rests on Books and Records

Proposed Intervenor is a longtime WWE stockholder that owns approximately $300,000 worth of WWE stock.  As would be expected of a substantial long-term stockholder, Proposed Intervenor did not rush to the courthouse door.[7]

---

[5] Merholz and Klein, ECF No. 39, ¶¶182-215; Kooi, ECF No. 36, ¶¶83-91; Nordstrom, ECF No. 45, ¶¶126-51.

[6] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007) ("[W]here plaintiff alleges particularized facts sufficient to prove demand futility under the second prong of *Aronson,* that plaintiff *a fortiori* rebuts the business judgment rule for the purpose of surviving a motion to dismiss pursuant to [Fed. R. Civ. P.] 12(b)(6).").

[7] While Plaintiffs have failed to allege when they bought their WWE stock (*see* MTD Reply at 8-9, Merholz and Klein, ECF No. 63; Kooi, ECF No. 76; Nordstrom, ECF No. 66), in response to WWE's request, Proposed Intervenor provided proof that he has standing to pursue any relevant derivative action.

Rather, after WWE publicly disclosed the true nature of its business dealings in the MENA region and the related financial impact, counsel for Proposed Intervenor initiated a thorough investigation and analysis of the public record to evaluate WWE's Board's culpability, if any, for the alleged wrongdoing.  Then, having determined that ample grounds existed to pursue an inspection under Section 220, Proposed Intervenor instructed counsel to prepare a demand under Section 220 (the "Section 220 Demand") to inspect corporate books and records, which was sent on May 6, 2020.  *See* Narwold Decl., Ex. B.  Proposed Intervenor's Section 220 Demand sought WWE's internal books and records concerning, among other things: the minutes, presentations, and deliberations of WWE's Board; the Company's internal controls and systems; the role WWE's fiduciaries played in disseminating the false and misleading statements and information; stock sales by the Company's insiders; and, materials sufficient to demonstrate the independence (or lack thereof) of WWE's directors.[8]

Importantly, in August 2020, WWE changed its counsel following an adverse decision in a related securities fraud action pending in the U.S. District Court for the Southern District of New York.  *See* Narwold Decl., Ex. C.  Counsel for Proposed Intervenor was actively in negotiations with new counsel for WWE regarding its response to the Section 220 Demand, including the potential scope of document production, but WWE's new counsel insisted they needed time to get up to speed.  Nevertheless, they were able to draft and file the motions to dismiss the Actions. Recognizing the potential harm from the pending motions to dismiss, Proposed Intervenor quickly reviewed the produced Section 220 Documents, which WWE did not complete until October 16, 2020.

---

[8] *See* Narwold Decl., Ex. B at 21-23.

## III.    ARGUMENT

### A.    The Court Should Allow Proposed Intervenor to Intervene

Permissive intervention is appropriate, upon timely motion, as to any nonparty who "has a claim or defense that shares with the main action a common question of law or fact," so long as "the intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights."  Rule 24(b)(1)(B), (b)(3); *see AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561-62 (2d Cir. 2005); *Assoc. of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102 (D. Conn. 2007).  Proposed Intervenor's request for permissive intervention satisfies these standards and should be granted to prevent actual, substantial prejudice to the interests of the real parties in interest—WWE and its stockholders

### 1.    Proposed Intervenor's Claims Share Numerous Common Questions of Law and Fact with the Actions

As shown above, Proposed Intervenor has prepared a Proposed Complaint seeking to hold the Individual Defendants accountable for their corporate misconduct related to, among other things, WWE's MENA operations.  Defendants' motions to dismiss seek to exploit the Plaintiffs' failure to similarly seek the Company's internal books and records by arguing that the amended complaints are missing key internal information, such as the involvement of the directors in the false and misleading statements.  *See, e.g.*, Motions to Dismiss at 2, 14, 17, and  28, Merholz and Klein, ECF No. 57; Kooi, ECF No. 67; Nordstrom, ECF No. 59 (criticizing Plaintiffs' "conclusory" assertions that defendants "'allowed,' 'authorized' and/or 'permitted' the [misleading] statements to be disseminated").  ██████████████████

████████████████████████

Having met this threshold requirement that the Actions arise from the same operative facts and involve substantially identical state law claims, the decision whether to permit intervention

lies within the sound discretion of the Court.  *See U.S.P.S. v. Brennan*, 579 F.2d 188, 191 (2d Cir.

1978); *AT&T Corp.*, 407 F.3d at 561; *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315

F.R.D. 169, 172 (S.D.N.Y. 2016).

### 2.      Proposed Intervenor's Motion Is Timely and Would Impose No Undue Delay or Prejudice in the Adjudication of the Original Parties' Rights

In determining the timeliness of a motion for permissive intervention, the Court should

consider "whether the intervention will unduly delay or prejudice the adjudication of the original

parties' rights."  Rule 24(b)(3).  In this context, courts "'measure[] prejudice caused by the

intervenors' delay—not by the intervention itself.'"  *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246,

1251 (10th Cir. 2001) (citing *Ruiz v. Estelle*, 161 F.3d 814, 828 (5th Cir. 1998)).  In addition to

Rule 24(b)(3)'s requirements, courts consider other factors in determining whether permissive

intervention is appropriate, such as:

> (1) whether the applicant will benefit by intervention, (2) the nature and extent of
> the intervenors' interests, (3) whether [the intervenors'] interests are adequately
> represented by the other parties, and (4) whether parties seeking intervention will
> significantly contribute to full development of the underlying factual issues in the
> suit and to the just and equitable adjudication of the legal questions presented.

*Ass'n of Conn. Lobbyists LLC*, 241 F.R.D. at 102 (quoting *Schaghticoke Tribal Nation v. Norton*,

No. 3:06cv81(PCD), 2006 WL 1752384, at *8 (D. Conn. June 14, 2006) (citing *Brennan*, 579 F.2d

at 191-92) (internal quotations omitted)).  Under these standards, Proposed Intervenor's Motion is

clearly timely.

***First***, Proposed Intervenor has filed the instant Motion in a timely manner.  After WWE

disclosed the true nature and impact of its business dealings in the MENA region, Proposed

Intervenor investigated possible derivative claims based on the public record.  Rather than rush to

the courthouse with a complaint predicated solely on publicly available information, Proposed

Intervenor heeded the Delaware Supreme Court's instructions.  *See, e.g.*, *Rales v. Blasband*, 634

A.2d 927, 934 n.10 (Del. 1993) ("Surprisingly, little use has been made of section 220 as an information-gathering tool in the derivative context.  Perhaps the problem arises in some cases out of an unseemly race to the court house, chiefly generated by the 'first to file' custom seemingly permitting the winner of the race to be named lead counsel.  The result has been a plethora of superficial complaints that could not be sustained.").

Upon determining that facts in the public record supported the requisite proper purpose for seeking to inspect documents, i.e., to determine whether WWE may have meritorious claims against culpable fiduciaries and whether there were grounds to allege the futility of making a litigation demand on the Board, Proposed Intervenor sent the Section 220 Demand to WWE on May 6, 2020.  After engaging in good faith with WWE's counsel but seeing WWE delay while pushing ahead to seek dismissal here, Proposed Intervenor had to threaten to file an action under Section 220 seeking to enforce his rights.  It was only then that WWE produced the Section 220 Documents with the needed alacrity.  Proposed Intervenor quickly reviewed the Section 220 Documents as they were produced and drafted the Proposed Complaint.

***Second***, Proposed Intervenor's Motion comes at a very early stage in the proceedings. Plaintiffs have yet to establish their standing to proceed derivatively on behalf of WWE. Permissive intervention under Rule 24(b) is timely even after defendants have moved for dismissal, when "a case schedule has [not] even been set."  *See* Narwold Decl. Ex. D, *In re Alphabet Inc. S'holder Derivative Litig.*, C.A. No. 10-cv-06880-RS (N.D. Cal. June 9, 2020) (ORDER) at 4-6 (granting a stay of 120 days renewable upon good cause shown pending intervenor's Section 220 investigation).

Proposed Intervenor's Motion imposes no prejudice on any party.  In contrast, the failure to allow intervention now will prejudice the real party in interest, WWE, as the viability of any

derivative claims will not be tested against a complaint bolstered with the Company's internal documents concerning the underlying wrongdoing.

**Third**, neither Plaintiffs nor Defendants in the Actions can identify any legally cognizable prejudice if intervention is permitted. *See generally Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (courts should consider "the legal position [the proposed intervenors] seek to advance, and its probable relation to the merits of the case"). Plaintiffs have no proprietary interest in WWE's claims and have yet to establish their standing to pursue them. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("The [derivative] claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's.'"); *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 327-28 (Del. Ch. 2012) *judgment rev'd* 74 A.3d 612 (Del. 2013) ("a stockholder whose litigation efforts are opposed by the corporation does not have authority to sue on behalf of the corporation until there has been a finding of demand excusal or wrongful refusal"); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1307-08 n.4 (3d Cir. 1993) ("In derivative suits, unlike shareholder class actions, recoveries belong to the corporation on whose behalf the suit was brought.").

Plaintiffs and their counsel have no interest that is not shared by WWE. In fact, Plaintiffs and their counsel share a duty to act solely in WWE's best interests, heedless of any personal interest they may have at stake in this proceeding. *Tansey v. Rogers*, No. 12-1049-RGA, 2016 WL 3519887, at *2 (D. Del. June 27, 2016) ("Shareholder-plaintiffs are asserting a corporation's right to seek redress for a harm to the corporation, and any recovery in a derivative action belongs only to the corporation."); *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991) *overruled by Brehm*, 746 A.2d at 244 (stockholder in derivative action "asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation").

Likewise, Defendants have no legitimate interest in pursuing a preclusive judgment based on pleadings challenges to complaints uninformed by the materials sought and reviewed by Proposed Intervenor through his diligent use of Section 220.  For Defendants to claim such an interest as a basis to oppose the limited relief sought here by Proposed Intervenor is the very embodiment of Defendants engaging in plaintiff shopping.

Finally, any finding of prejudice would undermine the carefully calibrated scheme of substantive law that Delaware's legislature and courts have erected to maintain the proper balance between board prerogatives to make decisions about litigation for their corporations and stockholders' rights to pursue claims on behalf of corporations.  *Wal-Mart Remand Order*, 2017 WL 6421389, at *4 (admonishing Delaware plaintiffs to intervene to protect "fruits of their extensive Section 220 efforts" on behalf of Wal-Mart Stores, Inc.).

Accordingly, an examination of the relevant circumstances demonstrates that Proposed Intervenor's Motion is timely.

### B.    Proposed Intervenor, WWE, and WWE's Stockholders Will Be Prejudiced if the Court Denies Intervention

The real parties in interest—WWE and its stockholders—face irreparable injury if the Motion is denied.  Proceeding with pleadings challenges to the state law claims asserted without the benefit of a books and records inspection could result in an order dismissing such claims with prejudice, thereby terminating the claims by operation of collateral estoppel or res judicata.  *Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 617-18 (Del. 2013) (dismissing Delaware derivative action on collateral estoppel grounds and noting that California and "numerous other jurisdictions have held that there is privity between derivative stockholders"); *Wal-Mart Remand Order*, 2017 WL 6421389, at *4 ("[T]here is much force in the suggestion that the Delaware Plaintiffs should have sought to intervene in the Arkansas court to protect their interests—

notwithstanding the fact that they had not yet obtained the documents they were seeking—a fact that was already known to the Arkansas court."); *see also* Narwold Decl., Ex. E, *Sbriglio, et al. v. Zuckerberg, et al.*, C.A. No. 2018-0307-JRS (Del. Ch. Dec. 17, 2018) (TRANSCRIPT) at 58-62 (granting permissive intervention and stay of derivative action until conclusion of intervenors' Section 220 demand, due to irreparable risk intervenors would get "*Wal-Marted*," i.e., "collaterally estopped from challenging an adverse ruling on defendants' motion to dismiss").[9]

Any decision in the pending Actions, whether on the issue of demand futility or on the merits, could have an adverse—and potentially dispositive—effect on Proposed Intervenor's ability to bring a subsequent suit based on additional nonpublic information obtained through prosecuting his use of Section 220. Despite this unseemly result, many courts could feel obliged out of comity to respect the preclusion rules of this Court, which could prevent any other WWE investor from pursuing particularized derivative claims supported by WWE's internal documents.[10] *See In re Wal-Mart Stores, Inc. Del. Derivative Litig.*, No. CV 7455-CB, 2016 WL

---

[9] Proposed Intervenor does not concede that an adverse ruling in the pending Actions, including dismissal on Federal Rule of Civil Procedure 23.1 grounds, would have any preclusive effect on a subsequently filed derivative action, but the risk is material and unnecessary.

[10] As observed by the Delaware Court of Chancery, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Cal. State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824 (Del. 2018) ("*Wal-Mart III*"); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d. Cir. 2002) (applying "federal law in determining the preclusive effect of a federal judgment"). In the Second Circuit, an issue is collaterally estopped if the party invoking the doctrine can demonstrate, among other things, the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action. *See Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993) ("The doctrine of collateral estoppel prevents a party from relitigating an issue clearly raised in a prior action and decided against that party or those with whom they share privity."). Accordingly, federal common law would impose on the state of Delaware, or another state court, a full-faith-and-credit requirement to give a Connecticut federal court judgment with prejudice the same force and effect as it would be entitled to under the Delaware federal court's preclusion rules. *Pyott*, 74 A.3d at 616-17.

2908344 (Del. Ch. May 13, 2016) ("*Wal-Mart I*"), *supplemented*, 167 A.3d 513, 515 (Del. Ch. 2017) ("*Wal-Mart II*") (finding on remand principles of comity required deference to foreign court's dismissal of fast-filer's complaint despite other stockholders using "tools at hand" to obtain Section 220 documents "***before*** filing derivative litigation so that the issue of demand futility may be decided on a well-developed factual record") (emphasis in original); *see also Wal-Mart III*, 179 A.3d at 847 (affirming *Wal-Mart I*'s granting of motion dismiss on collateral estoppel grounds as "differing groups of stockholders who seek to control the corporation's cause of action share the same interest and therefore are in privity").[11]

It is axiomatic under Delaware law that attempting to plead demand futility without the benefit of facts gleaned from an inspection of corporate books and records is an extremely risky and often dubious proposition. Delaware's carefully calibrated scheme of rules and presumptions applicable to derivative litigation would be fundamentally undermined if parties who did not avail themselves of inspection demands were permitted to rush to a non-Delaware courthouse and jeopardize otherwise viable and valuable claims putatively brought on behalf of the corporation, not the particular plaintiff or their counsel. *See King*, 12 A.3d at 1145 ("Delaware courts have strongly encouraged stockholder-plaintiffs to utilize Section 220 before filing a derivative action, in order to satisfy the heightened demand futility pleading requirements of Court of Chancery Rule 23.1."); *Rales*, 634 A.2d at 934 n.10 (criticizing the "race to the court house" as harming

---

[11] *Accord Asbestos Workers Local 42 Pension Fund v. Bammann*, No. 9772-VCG, 2015 WL 2455469, at *15 (Del. Ch. May 21, 2015), *as revised* (May 22, 2015) (applying collateral estoppel to dismiss derivative complaint because demand futility had been litigated and issues were substantially similar); *Fuchs Family Tr. v. Parker Drilling Co.*, No. CV 9986-VCN, 2015 WL 1036106, at *5 (Del. Ch. Mar. 4, 2015) (holding in a Section 220 case that collateral estoppel barred plaintiffs from pursuing derivative claim); *Respler v. Evans*, 17 F. Supp. 3d 418, 421 (D. Del. 2014) (holding case collaterally estopped because Texas court had found demand not futile); *Pyott*, 74 A.3d at 614-17 (holding case collaterally estopped because California case without Section 220 documents had been dismissed for failure to plead demand futility).

stockholders and noting, "[n]othing requires the Court of Chancery, or any other court having appropriate jurisdiction, to countenance this process by penalizing diligent counsel who has employed these methods, including section 220, in a deliberate and thorough manner in preparing a complaint that meets the demand excused test of *Aronson*.").

The substantial prejudice to the interests of the real parties in interest (WWE and its stockholders) is precisely why the Delaware Supreme Court has repeatedly admonished stockholders who pursue Section 220 inspections that they must seek to intervene in any derivative action not predicated on an inspection of books and records.

### C.    The Proposed Intervenor's Complaint Is Materially Superior

The main thrust of Plaintiffs' argument for excusal of demand is that a majority of the Board faces a substantial likelihood of liability.   Defendants, in turn, have argued that the "Plaintiffs do not make *any* particularized allegations concerning the Outside Directors' conduct from which knowledge [of the wrongdoing or falsity of the statements] could be inferred, relying instead solely (and impermissibly) on their status."  *See* MTD Reply at 4, Merholz and Klein, ECF No. 63; Kooi, ECF No. 76; Nordstrom, ECF No. 66.  The Proposed Complaint does not suffer from a similar defect.

In contrast to Plaintiffs' complaints, █████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ These are just some of the many and

vital details contained in the Proposed Complaint that are missing from Plaintiffs' complaints.

    **D.**    **The Relief Proposed Intervenor Seeks Is Carefully Crafted to Avoid Any Undue Imposition on the Court's Exercise of Jurisdiction and Management of Its Calendar**

Proposed Intervenor seeks relief that concomitantly imposes no undue burden on this Court's exercise of its jurisdiction and avoids any undue prejudice as to Plaintiffs or WWE. Granting the intervention will ensure that the ***best*** derivative claims on WWE's behalf asserted under Delaware law will be pursued, informed by a careful review of all relevant material obtained in Proposed Intervenor's investigation. In other words, Proposed Intervenor is better situated to challenge a motion to dismiss with particularized claims informed by internal books and records obtained through the Section 220 process—the very "tools at hand" prescribed by Delaware courts.

In the alternative, if the Court determines that the motions to dismiss should move forward, Proposed Intervenor respectfully requests that, to the extent that the Court enters any dismissal or other adverse ruling, that such dismissal or other adverse ruling be with prejudice ***only to Plaintiffs in the Actions***, and without prejudice to Proposed Intervenor or other WWE stockholders. *See Wal-Mart Remand Order*, 2017 WL 6421389, at *4 ("Delaware Plaintiffs should have sought to intervene…. Such an attempt to intervene, even if unsuccessful, would ensure that the rendering court would take into account the litigation pending elsewhere and make a determination as to whether any dismissal should be with or without prejudice, and as to the named plaintiff only[.]").

## IV.    CONCLUSION

For the foregoing reasons, Proposed Intervenor respectfully requests that this Court grant his Motion for Permissive Intervention.

Dated: October 23, 2020                    Respectfully submitted,

**MOTLEY RICE LLC**

/s/ *William H. Narwold*
William H. Narwold (CT 00133)
One Corporate Center
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
E-mail: bnarwold@motleyrice.com

**ROBBINS LLP**
Brian J. Robbins (CT 417036)
Gregory E. Del Gaizo
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
            gdelgaizo@robbinsllp.com

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Mark Lebovitch
Daniel Meyer
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1519
Facsimile: (212) 554-1444
E-mail: markl@blbglaw.com
            daniel.meyer@blbglaw.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone (484) 324-6800
Facsimile: (484) 631-1305
E-mail: rmaniskas@rmclasslaw.com

*Attorneys for Proposed Intervenor Dennis
Palkon*

1488805

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2020, I electronically filed the above-titled document with the Clerk of Court using the CM/ECF system which will send notification of such filing to those registered as CM/ECF participants.

/s/ *William H. Narwold*
William H. Narwold (CT 00133)