# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ, and MELVYN KLEIN, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., <br>         *Plaintiffs*, <br>       v. <br><br> VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br>        *Defendants*, <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br>         *Nominal Defendant*. | No.: 3:20-cv-00557-VAB |
| DANIEL KOOI, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., <br>         *Plaintiff*, <br>       v. <br><br> VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED,  PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br>        *Defendants*, <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br>         *Nominal Defendant*. | No.: 3:20-CV-00743-VAB |

RODNEY NORDSTROM, *derivatively on behalf of*
WORLD WRESTLING ENTERTAINMENT,
INC.,

*Plaintiff*,

v.

VINCENT K. MCMAHON, GEORGE A.
BARRIOS, MICHELLE D. WILSON,
STEPHANIE MCMAHON, PAUL LEVESQUE,
FRANK A. RIDDICK III, STUART U.
GOLDFARB, LAUREEN ONG, ROBYN W.
PETERSON, MAN JIT SINGH, JEFFREY R.
SPEED, ALAN M. WEXLER, and PATRICIA A.
GOTTESMAN,

*Defendants*,

WORLD WRESTLING ENTERTAINMENT,
INC.,

*Nominal Defendant*.

No. 3:20-CV-00904-VAB

## RULING AND ORDER ON MOTION TO DISMISS

Ryan Merholz, Melvyn Klein, Daniel Kooi, and Rodney Nordstrom (collectively,

"Plaintiffs") have each filed Shareholder Derivative Complaints on behalf of World Wrestling

Entertainment, Inc. ("WWE" or the "Company") against Vincent K. McMahon, George A.

Barrios, Michelle D. Wilson, Stephanie McMahon, Paul Levesque, Frank A. Riddick III, Stuart

U. Goldfarb, Laureen Ong, Robyn Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler,

and Patricia A. Gottesman (collectively "Defendants").[1]

---

[1] The Complaint filed by Ryan Merholz and Melvyn Klein does not bring claims against Patricia A. Gottesman.

While Defendants' motion to consolidate these cases has been denied without prejudice,[2] the Court has allowed the parties to consolidate their briefings for motions to dismiss, *see, e.g.*. *Nordstrom*, Order, ECF No. 40 at 2, and Defendants have moved to dismiss all of the claims.

For the reasons stated below, Defendants' motion to dismiss all of the claims in each of the *Nordstrom, Kooi,* and *Merholz* lawsuits is **GRANTED.**

The Court finds that all three lawsuits fail to satisfy the demand futility requirement, and the *Merholz* lawsuit additionally fails for lack of standing.

Because of the pending motion to intervene filed by Intervenor Plaintiff Dennis Palkon, *see, e.g.*, *Nordstrom*, Mot. to Intervene, ECF No. 71 (Oct. 23, 2020) ("Mot. to Intervene"), the Court will await resolution of that motion and its underlying claims before deciding whether the dismissal of these three cases is with prejudice or conceivably can be remedied by seeking leave to file an amended pleading.[3]

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations[4]**

   Incorporated on February 21, 1980 in Delaware, WWE has its headquarters in Stamford, Connecticut, with satellite offices in New York, Los Angeles, London, Mexico City, Mumbai,

---

[2] Presently there are three separate lawsuits with plaintiffs suing derivatively and on behalf of WWE. *See Nordstrom v. McMahon*, No. 20-cv-00904-VAB (D. Conn July 1, 2020) (hereinafter *Nordstrom* or "the *Nordstrom* lawsuit"; *Merholz v. McMahon*, No. 20-cv-00557-VAB (D. Conn Apr. 24, 2020) (hereinafter *Merholz* or the "*Merholz* lawsuit"); *Kooi v. McMahon*, No. 20-cv-00904-VAB (D. Conn June 1, 2020), (hereinafter *Kooi* or the "*Kooi* lawsuit").

[3] In doing so, the Court is exercising its "inherent authority to manage [its] docket[] and courtroom[] with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1893 (2016). Before addressing the pending motion to intervene and its underlying claims, the issuance of this ruling will provide guidance to the proposed intervenor as well as the Defendants as to the viability of those proposed claims. This may also assist the Plaintiffs in *Merholz, Kooi and Nordstrom* in determining if their respective lawsuits, either in whole or in part, can be remedied through further pleading.

[4] Mr. Nordstrom's Amended Complaint is the primary source of the factual allegations provided, as it encompasses the factual allegations of the Complaints in *Merholz* and *Kooi*.

Shanghai, Singapore, Dubai, Munich, and Tokyo, *Nordstrom*, Am. Compl., ECF No. 45 ¶ 75 (Aug. 14, 2020) ("*Nordstrom* Am. Compl."), and engages in the sports entertainment business in North America, Europe, the Middle East, Africa, the Asia-Pacific region, and Latin America, *id.* WWE provides entertainment-based wrestling matches, which are storyline-driven, scripted, and choreographed. *Id.* ¶ 76. As of February 2019, WWE allegedly had 915 employees, *id.* ¶ 77 and its programming reached over 800 million homes worldwide in 28 languages, *id.* ¶ 2.

All of the Defendants are allegedly directors and/or officers of WWE. *Id.* ¶¶ 10-51.

Vincent K. McMahon is the Company's co-founder, Chairman of the Board, Chief Executive Officer, and Chair of the Executive Committee. *Id.* ¶ 13.

George A. Barrios served as the Company's Co-President, principal financial officer, and a member of its Board of Directors until allegedly leaving WWE in late January 2020. *Id.* ¶ 16. Michelle D. Wilson served as the Company's Co-President and a member of its Board of Directors, before also leaving in late January 2020. *Id.* ¶ 20.

Stephanie McMahon is a director and Chief Brand Officer of the Company. *Id.* ¶ 24.

Paul Levesque is a director and Executive Vice President, Talent, Live Events & Creative of WWE. *Id.* ¶ 27.

Frank A. Riddick III is a director of the Company and, since January 2020, has served as the Company's Interim Chief Financial Officer ("CFO"). *Id.* ¶ 30.

Stuart U. Goldfarb is a director of the Company and a member of the Company's Audit Committee and Governance & Nominating Committee. *Id.* ¶ 33.

Laureen Ong is a director of the Company, Chair of the Company's Compensation Committee, and member of the Company's Governance & Nominating Committee. *Id.* ¶ 36.

Robyn Peterson is a director of the Company, has served as the Chair of the Compensation Committee, and is a member of the Governance & Nominating Committee. *Id.* ¶ 39.

Man Jit Singh is a director of the Company and a member of the Audit Committee. *Id.* ¶ 42.

Jeffrey R. Speed is a director of the Company, Chair of the Audit Committee, and a member of the Company's Compensation Committee. *Id.* ¶ 45.

Alan M. Wexler is a director of the Company and a member of the Company's Compensation Committee. *Id.* ¶ 48.

Patricia A. Gottesman is a director of the Company and Chair of the Governance and Nominating Committee. *Id.* ¶ 51.

The allegations in the Plaintiffs' lawsuits "stem[] from WWE's expansion into the Middle East and North Africa ('MENA') market." *Id.* ¶ 3. "As part of this campaign, the WWE [allegedly] formed a 10-year partnership with Saudi General Sports Authority ('SGSA') to host live events in Saudi Arabia and a multi-year television distribution rights agreement with Orbit Showcase Network ('OSN'), a direct broadcast satellite provider serving the MENA region." *Id.*

The Kingdom of Saudi Arabia allegedly is an absolute monarchy ruled by the Al Saud royal family. *Id.* ¶ 79. On or around the start of 2014, Plaintiffs allege, "the Saudi government began hosting several WWE live events in Saudi Arabia." *Id.* The events allegedly were "very lucrative for WWE and later expanded as part of Saudi Arabia's social and economic reform program, Saudi Vision 2030." *Id.*

"On July 21, 2014, WWE and [Orbit Showcase Network] OSN announced a five-year exclusive media agreement, stating that 'WWE's flagship television program Monday Night

Raw [would] air live on OSN, WWE's exclusive pay-TV partner in the Middle East and North Africa through 2019.'" *Id.* ¶ 81 (alteration in original). On February 15, 2015, WWE and OSN allegedly "jointly issued a release stating they were adding WWE Network to the five-year agreement as part of an expanded partnership." *Id.* ¶ 82.

Over the years, the Middle East market allegedly "grew to become the Company's second-largest market by monetization." *Id.* ¶ 83. On or around March 2018, the Saudi Press Agency allegedly "announced that WWE and the SGSA had signed a 10-year multi-platform partnership with WWE to hold wrestling events [Saudi Arabia]." *Id.* ¶ 84. Analysts allegedly "estimated the partnership was worth about $500 million to WWE." *Id.* The first event allegedly "held under the Saudi partnership" occurred on April 27, 2018. *Id.* ¶ 85. Plaintiffs allege that Vincent McMahon listed the Company's ten-year strategic partnership with the Saudi General Sports Authority as "among the Company's most prestigious international initiatives." *Id.* ¶ 86.

Plaintiffs allege that the Defendants "caused the Company to issue a press release," *id.* ¶ 87, stating that "WWE management expect[ed] the Company to achieve another year of record revenue . . . ," *id.* ¶ 88, with knowledge that "WWE and OSN agreed to the early termination of the OSN media rights agreement. *Id.* ¶ 91. The press release allegedly declared:

> In 2019, WWE management expects the Company to achieve another year of record revenue of approximately $1.0 billion and, as previously communicated, is targeting Adjusted OIBDA [(Operating Income Before Depreciation and Amortization)] of at least $200 million, which would also be an all-time record (up at least 12% from Adjusted OIBDA of $178.9 million in 2018).

*Id.* ¶ 88. On or around July 25, 2019, as Plaintiffs allege, the WWE "finally acknowledged what the Defendants had long known – that the OSN agreement had ended." *Id.* ¶ 5. Allegedly "to mitigate the impact of this revelation, the [] Defendants caused the Company to simultaneously disclose that it was in negotiations with the SGSA for a media-rights agreement for the MENA

region and that the deal would be complete 'very soon' and that they already had an 'agreement in principle.'" *Id.*

Plaintiffs allege that the Defendants, "[b]y reason of their positions as officers, directors and/or fiduciaries of WWE and because of their ability to control the business and corporate affairs of WWE," "owed WWE and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care," *id.* ¶ 52, and "had a duty to prevent and correct the dissemination of erroneous, misleading, and deceitful information concerning, inter alia, the Company's financial condition, business operations, management, performance, growth, earnings, and business prospect[s]," *id.* ¶ 57. "Moreover, as senior executive officers and directors of a publicly-traded company whose common stock was registered with the Securities and Exchange Commission ("SEC"), Plaintiffs allege that [under] the Exchange Act, Defendants "had a duty to act in the best interest of the Company." *Id.*

Defendants' allegedly "wrongful conduct came to light" when "the price of WWE stock fell from $100 per share to $40.24 per share on February 6, 2020, for a 60 [percent] decline in share price." *Id.* ¶ 6; *see also* ¶¶ 112–17 (explaining the decline in stock values from October 13, 2019 to February 6, 2020). Plaintiffs allege that "some of the Company's most senior executives – including Vincent K. McMahon – took advantage of WWE's inflated stock price to sell millions of dollars' worth of their own WWE shares during the Relevant Period." *Id.* ¶ 6. The Relevant Period is defined as being "from February 5, 2019 through February 7, 2020," *id.* ¶ 1. Plaintiffs allege that these sales happened when the Defendants "knew, or were reckless in not knowing, that the agreement with OSN would not be renewed." In or around November 2018, OSN allegedly informed WWE that it "was shutting down its sports coverage, and, accordingly,

an early termination agreement between WWE and OSN allegedly was agreed to on or around December 18, 2018." *Id.* ¶ 4.

Plaintiffs allege that "[t]his information went undisclosed for months." *Id.* "Instead, the [] Defendants [allegedly] caused the Company to state that it was working to renew the MENA-region media-rights agreement (*i.e.*, the OSN agreement) and that no further comment on the status of the 'renewal' negotiations would be provided." *Id.* A deal for the media-rights in the MENA region allegedly "was necessary for the Company to meet its full-year 2019 Adjusted [OIBDA] guidance of $200 million." *Id.* ¶ 5.

### B. Procedural History

#### a. *Merholz*

On April 24, 2020, Ryan Merholz and Melvyn Klein (together, the "*Merholz* Plaintiffs") filed their shareholder derivative action and asserted five claims: (1) breach of fiduciary duty, (2) unjust enrichment, (3) waste of corporate assets, (4) violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5, and (5) violations of Section 20(a) of the Exchange Act. *See Merholz, Compl.*, ECF No. 1 (April 24, 2020).

On June 19, 2020, the *Merholz* Plaintiffs filed an Amended Complaint. *Id.*, Am. Compl., ECF No. 7 (June 9, 2020).

On July 28, 2020, the *Merholz* Plaintiffs filed a Second Amended Complaint. Second Am. Compl., ECF No. 39-1 (July 28, 2020) ("*Merholz* Second Am. Compl.").

On August 28, 2020, Defendants moved to dismiss the Second Amended Complaint. Mot. to Dismiss, ECF No. 57 (Aug. 28, 2020) ("Def. Mot.").[5]

---

[5] Defendants filed identical motions to dismiss, addressing each of the three Complaints. *See Kooi,* Mot. to Dismiss, ECF No. 67 (Aug. 28, 2020); *Nordstrom,* Mot. to Dismiss, ECF No. 59 (August 28, 2020). "Def. Mot." will be used as a reference to the motion on all three dockets.

On September 18, 2020, the Plaintiffs filed a joint memorandum in opposition to the Defendants' motion to dismiss. Mem. in Opp'n, ECF No. 62 (Sept. 18, 2020) ("Pl.s' Mem. in Opp'n").[6]

On October 2, 2020, the Defendants filed their reply to the Plaintiffs' response. Mem. in Response, ECF No. 63 (Oct. 2, 2020) ("Def. Reply").[7]

### b.  Kooi

On May 7, 2020, Daniel Kooi filed his shareholder derivative action in Connecticut Superior Court and alleged breach of fiduciary duty and unjust enrichment against the same current and former WWE officers and directors in the *Merholz* lawsuit, with the addition of Patricia Gottesman as a defendant. *Kooi v. McMahon*, No. FST-CV-20-6046762-S (Conn. Super. Ct. May 7, 2020).

On June 1, 2020, the Defendants removed the case to this Court. *Kooi*, Notice of Removal, ECF No. 1 (June 1, 2020).

On June 2, 2020, although the case was originally assigned to U.S. District Judge Robert N. Chatigny, Judge Chatigny transferred the case to this Court due to the related and first-filed *Merholz* lawsuit. *Id.*, Order of Transfer, ECF No. 27 (June 2, 2020).

On July 3, 2020, Mr. Kooi filed an Amended Complaint, which, inter alia, added a third claim for insider selling against Defendants McMahon, Wilson, and Barrios. *Id.*, Am. Compl., ECF No. 36 (July 3, 2020) ("*Kooi* Am. Compl.").

---

[6] Plaintiffs filed identical joint memoranda in opposition to the Defendants' motion to dismiss. *See Kooi*, Mem in Opp'n, ECF No. 72 (Sept. 18, 2020); *Nordstrom*, Mem in Opp'n, ECF No. 72 (Sept. 18, 2020). "Pl.s' Mem. in Opp'n" will be used as a reference to the memoranda on all three dockets.

[7] Defendants filed identical replies in response to the Plaintiffs' joint memoranda. *See Kooi*, Mem. in Response, ECF No. 76 (Oct. 2, 2020); *Nordstrom*, Mem. in Response, ECF No. 67 (Oct. 2, 2020). "Def. Reply" will be used as a reference to the Defendants' reply on all three dockets.

On August 28, 2020, Defendants moved to dismiss the Amended Complaint. Mot. to Dismiss, ECF No. 67 (Aug. 28, 2020).

On September 18, 2020, the Plaintiffs filed a joint memorandum in opposition to the Defendants' motion to dismiss. Mem. in Opp'n, ECF No. 72 (Sept. 18, 2020).

On October 2, 2020, Defendants filed their reply to the Plaintiffs' response. Mem. in Response, ECF No. 76 (Oct. 2, 2020).

### c. Nordstrom

On June 3, 2020, Rodney Nordstrom filed a lawsuit in Connecticut Superior Court and asserted five claims against Defendants: (1) breach of fiduciary duty, (2) unjust enrichment, (3) abuse of control, (4) gross mismanagement, and (5) waste of corporate assets. Three of the same claims (breach of fiduciary duty, unjust enrichment, and waste of corporate assets) were also asserted in the *Merholz* action, and two of the same claims (breach of fiduciary duty and unjust enrichment) were also asserted in the *Kooi* action. *Nordstrom v. McMahon, et al.*, No. FST-CV-20-6046965-S (Conn. Super. Ct. June 3, 2020).

On July 1, 2020, Defendants removed the case to this Court. Notice of Removal, ECF No. 1 (July 1, 2020).

On July 7, 2020, although it had been originally assigned to U.S. District Judge Charles S. Haight, Jr., Judge Haight transferred the case to this Court due to the related and first filed *Merholz* lawsuit. Order of Transfer, ECF No. 20 (July 7, 2020).

On August 14, 2020, Mr. Nordstrom amended his Complaint, removing the claims of abuse of control and gross mismanagement. Am. Compl., ECF No. 45 (Aug. 14, 2020).

On August 28, 2020, the Defendants filed their motion to dismiss the Amended Complaint. Mot. to Dismiss, ECF No. 59 (Aug. 28, 2020).

On September 18, 2020, the Plaintiffs filed a joint motion in opposition to the Defendants' motion to dismiss. Mem in Opp'n, ECF No. 64 (Sept. 18, 2020).

On October 2, 2020, the Defendants filed their reply to the Plaintiffs' response. Mem. in Response, ECF No. 67 (Oct. 2, 2020).

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Defendants argue that the Plaintiffs in each of these shareholder derivative actions have failed to allege: (1) demand futility; (2) contemporaneous and continuous stock ownership; and (3) otherwise fail to state a claim for relief. Def. Mot. at 4.

The Court will address each of these claims in turn.

### A.   Demand Futility

"Under Delaware law, the board of directors manages the business and affairs of the corporation, which includes deciding whether the corporation should pursue litigation against others." *McElrath v. Kalanick*, 224 A.3d 982, 990 (Del. 2020). "To protect the directors' managerial authority, a stockholder must comply with Court of Chancery Rule 23.1," *id.*, which requires that "[a] stockholder first make a demand on the board to pursue the claim, and, if the

board declines, attempt to demonstrate that the directors wrongfully refused the demand," *id.* (internal quotation marks omitted).

This "demand requirement affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur." *Id.* (internal quotation marks omitted). *Id.*; *see Rales v. Blasband*, 634 A.2d 927, 937 n. 7 (holding that, where both corporations at issue were Delaware corporations, "the substantive corporation law of Delaware determines whether or not the demand requirements of Fed. R. Civ. P. 23.1 have been satisfied."); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991) ("The scope of the demand requirement under state law clearly regulates the allocation of corporate governing powers between the directors and individual shareholders.").

Nevertheless, compliance with the demand requirement is not necessary if the stockholder "can allege with sufficient particularity that demand is futile and should be excused due to a disabling conflict by a majority of the directors to consider the demand." *McElrath*, 224 A.3d at 990. . In considering whether the demand futility requirement has been met, the court must consider: (1) "whether any directors were interested," i.e., "would face a substantial likelihood of personal liability for the conduct alleged in the complaint"; (2) if the court determines that any directors "were interested, the court considers whether any other directors were not independent of an interested director".; and (3) "[a]fter tallying the results," whether "a majority of the board in place when the complaint was filed was disinterested and independent [and, if so] the stockholder must first make a demand on the board before pursuing litigation on the corporation's behalf." *Id.*

Finally, with respect to pleading demand futility, if a corporation's certificate of incorporation "exculpates its directors from monetary liability for fiduciary duty breaches to the

fullest extent permitted by the Delaware General Corporation Law . . . [then] the plaintiff must plead with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiffs fail to satisfy the pleading requirements for demand futility on each of their claims.

As to the breach of fiduciary duty claim, Defendants argue that Plaintiffs "do[] not challenge any specific board decision or challenge[] the board's failure to act," Def. Mot. at 9, and that "the Complaints lack any particularized allegations that any of the Outside Directors[8] violated their oversight responsibilities by failing to implement a compliance system." *Id.* at 16.

Defendants also argue that the six outside directors, Defendants Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh Jeffrey R. Speed, and Alan M. Wexler cannot be sued for breach of fiduciary duty, in part, because Plaintiffs fail to allege that these Defendants are "interested" or "lack independence from an interested person." *Id.* at 10. In their view, "none of the three Complaints contain any non-conclusory factual allegations showing that any of the Outside Directors were involved in the preparation of the alleged misstatements." *Id.* at 13.

As to the waste of corporate assets claim, Defendants argue that the Plaintiffs have not sufficiently alleged (1) an irrational business decision; (2) the amounts [the corporation] agreed to pay were so enormous by comparison to the company's potential liability; (3) that the WWE's stock repurchases were so one sided that a person apt at business would not find that the

---

[8] The motion to dismiss refers to six individuals as the "outside directors," because they are not employed by WWE.

corporation has not received adequate consideration.; and (4) that the loss of potential funds amounts to a cognizable form of corporate waste. Def. Mot. at 18-20.

As to the unjust enrichment claim, Defendants argue that this claim is "duplicative of [Plaintiffs'] breach of fiduciary duty claims because [Plaintiffs] allege the Outside Directors' purported breaches of fiduciary duty led to their allegedly unjust retention of their director compensation," *id.* at 19, and that the "Plaintiffs have not alleged facts showing that the Outside Directors received anything from the Company other than their regular compensation as Board members," *id.* at 20.

As to the Exchange Act claim, Defendants argue that Plaintiffs have only alleged that the Outside Directors signed the securities filing included in the Company's Form 10-K. Def. Mot. at 21. But, in their view, Plaintiffs must "specifically allege defendants' knowledge of facts or access to information contradict[ed] their public statements." *Id.* at 22 (alterations and emphasis omitted).

Finally, Defendants argue that "mere service on an audit committee alone does not demonstrate that these Outside Directors had [ ] knowledge  or otherwise face a substantial likelihood of liability." *Id.* at 23.

Plaintiffs argue in response that they have sufficiently pled a claim of demand futility, because they "only need [to] allege with particularity facts giving rise to a reasonable inference that a majority of directors cannot consider a demand disinterestedly." Pl.s' Mem. in Opp at 10 (citing *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996)). They argue that "each of the Directors received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company." *Nordstrom* Am. Compl. ¶ 131. They further argue that a "[s]ubstantial likelihood of liability exists where there is conscious

disregard of a duty to act, particularly when serious problems or misconduct threatening the corporation's core business is at issue," and, accordingly, that the Defendants may be found liable for their alleged failure to act. Pl.s' Mem. in Opp at 21.

Plaintiffs also argue that a majority of the WWE directors knew, or had reason to know, that the OSN Agreement was terminated without a replacement and the "strong financial performance" they had published "was illusory by February 7, 2019." *Id.* at 19. In Plaintiffs' view, the directors inflated stock prices for their personal benefit and to the detriment of the Company. *See id.*

Plaintiffs acknowledge the overlap between the breach of fiduciary duties claim and unjust enrichment, but argue that both should survive. *Id.* at 14 n.10 (arguing that "a claim for unjust enrichment is satisfied when there is a corresponding breach of fiduciary duty. Therefore, the futility analysis for both claims is identical.").

Plaintiffs further argue that in another lawsuit, "[U.S. District Judge Jed] S. Rakoff [of the Southern District of New York] already concluded that the statements in the 2018 10-K were false and misleading." *Id.* at 19. In their view, "the *Merholz* Complaint adequately pleads a strong inference of scienter." *Id.* at 20 (emphasis added).

Finally, Plaintiffs argue that Defendants' roles on the Audit Committee are sufficient in this case to meet the demand futility standard, *see* Pl.s' Mem. in Opp'n at 14,  because Audit Committee members are required by contract to "[r]eview and discuss earnings press releases with management, including the type and presentation of information, paying particular attention to any use of pro-forma, adjusted or other information which is not required by generally accepted accounting principles ('GAAP')." *Nordstrom* Am. Compl. ¶ 69. Also, in their view, members of the Audit Committee are required to "[r]eview management's monitoring of the

Company's compliance with the organization's Code, and ensure that management has the proper review system in place to ensure that Company's financial statements, reports and other financial information disseminated to governmental organizations and the public satisfy legal requirements." *Id.*

The Court disagrees.

"The standard for conducting this inquiry at the demand futility stage is well balanced, requiring that the plaintiff plead facts with particularity, but also requiring that th[e] Court draw all reasonable inferences in the plaintiff's favor." *Marchand v. Barnhill*, 212 A.3d 805, 818 (Del. 2019). Indeed, "the plaintiff cannot just assert that a close relationship exists," but rather must plead "specific facts about the relationship." *Id.*

"[T]he primary basis upon which a director's independence must be measured is whether the director's decision is based on the corporate merits of the subject before the board, rather than extraneous considerations or influences." *Schoon v. Smith*, 953 A.2d 196, 207 (Del. 2008) (citation omitted). Also, because WWE has "exculpate[d] its directors from monetary liability for fiduciary duty breaches to the fullest extent permitted by the Delaware General Corporation Law," *McElrath*, 224 A.2d at 991; *see* Def. Mot. at 9. Plaintiffs must allege "that a director acted inconsistent with his fiduciary duties and, most importantly, that the director *knew* he was so acting." *McElrath*, 224 A.2d at 991-92 (emphasis in original). Plaintiffs, however, have not done so.

Of the ten Directors on WWE's board, six of them are Outside Directors: Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, and Alan M. Wexler. *See Nordstrom* Am. Compl. ¶¶ 33-50 (describing their relationships with WWE), 128. The six Outside Directors are alleged to be interested either because of their signatures on

WWE's 2018 10-K filings (Defendants Goldfarb, Ong, Peterson, Singh, Speed, and Wexler), Pls.' Mem. in Opp'n at 16-19; their membership on WWE's Audit Committee (Goldfarb, Singh, and Speed), *id.* at 14-16; or both (Goldfarb, Singh, and Speed), *id.* at 14-19; *Nordstrom* Am. Compl. ¶¶ 150-51. But there is nothing in the conclusory allegations in any of the three Complaints suggesting that any of these outside directors "had actual or constructive knowledge that their conduct was legally improper." *McElrath*, 224 A.2d at 991; *see also Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original). As a result, their more specific arguments regarding the various claims fail as well.

As to the breach of fiduciary duty claim, under Delaware law, "directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances" *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998). While Plaintiffs argue that the six Outside Directors "willfully" and with "actual or constructive knowledge" that the Company made "false and misleading statements," *see Nordstrom* Am. Compl. ¶¶ 154-57, this "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). As Defendants rightly note, these conclusory allegations fall short of the "particularized facts" necessary to allege that "the Outside Directors (i) 'knowingly disseminat[ed] materially false information' and (ii) were 'deliberately misinforming shareholders.'" Def. Mot. at 13 (quoting *Malone*, 722 A.2d at 14).

Plaintiffs' reliance on a trio of cases, *In re Zillow Grp., Inc. S'holder Derivative Litig.*, No. C17-1568-JCC, 2020 WL 978503 (W.D. Wash. Feb. 28, 2020), *In re SCANA Corp.*

*Derivative Litig.*, No. CV 3:17-3166-MBS, 2018 WL 3141813, (D.S.C. June 27, 2018), and *In re*

*Intuitive Surgical S'holder Derivative Litig.*, 146 F. Supp. 3d 1106, 1120–21 (N.D. Cal. 2015),

does not warrant a different result. *See* Pl.'s Mem. in Opp'n at 15-16. Unlike the conclusory

allegations regarding knowledge, here, in the trio of cases the underlying factual allegations

provided a plausible basis for the alleged knowledge of wrongdoing of the defendants. *See In re*

*Zillow Grp., Inc.*, 2020 WL 978503, at *2 ("[W]hile the [Consumer Financial Protection Bureau]

investigation was ongoing, the individual Defendants signed 2015 10-K and 2016 10-K annual

filings with the Securities and Exchange Commission. These filings represented that Zillow was

in compliance with all government regulations." (citation omitted)); *In re SCANA Corp.*

*Derivative Litig.*, 2018 WL 3141813, at *5 (the directors had received information that "put

every Board member on notice of insurmountable problems with [a company initiative]

including an unrealistic and unachievable schedule; unlikely completion of engineering and

licensing workload; and poor productivity") (internal quotation marks omitted); *In re Intuitive*

*Surgical*, 146 F. Supp. 3d at 1118 (finding that after citing to numerous investigations by the

Federal Drug Administration, the "Plaintiff ha[d] provided sufficient allegations to show that the

board received repeated FDA warnings about off-label marketing and failure to comply with

reporting regulations").

     In other words, these three cases stand for the unremarkable proposition that the quality

of the facts specifically alleged matter, not their labels. *See Twombly*, 550 U.S. at 555 ("[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions . . . .").

     To support their corporate waste claim, Plaintiffs must allege "a transfer of corporate

assets that serves no corporate purpose; or for which no consideration at all is received." *Brehm*

*v. Eisner*, 746 A.2d 244, 263 (Del. 2000). "If, however, there is any substantial consideration received by the corporation, and if there is a good faith judgment that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky." *Id.* (emphases omitted). However, the Plaintiffs offer are nothing but conclusory allegations to suggest that any of the six Outside Directors face a substantial threat of personal liability as to a claim of corporate waste, as further discussed below.

Under Delaware law, unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). In *Nemec*, the court explained that "the elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* As Defendants rightly point out, "Plaintiffs have not alleged facts showing that the Outside Directors received anything from the Company other than their regular compensation as Board members." Def. Mot. at 20. On this basis alone, this claim fails to allege that any of the six outside directors face a substantial threat of personal liability as to an unjust enrichment claim. *See In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010) (finding plaintiffs' unjust enrichment claim failed in part because the "only enrichment alleged . . . consist[ed] of [the] defendants' salaries, benefits, and unspecified bonuses. Plaintiffs ha[d] not pleaded that [the] defendants' compensation during [the relevant] period was of extraordinary magnitude . . . .").

Section 10(b) of the Exchange Act makes it unlawful for

> any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). To prevail on this claim, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci-Atlanta*, 552 U.S. 148, 157 (2008). None of the conclusory factual allegations in the *Merholz* Second Amended Complaint suggest that any of the six outside directors face a substantial threat of personal liability as to a Section 10(b) claim.[9] *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Indeed, the factual allegations regarding these Defendants relates to either the signing of 10-K filings or participation on the Audit Committee. And while Plaintiffs point to the lawsuit before Judge Rakoff as a basis for claiming that the six elements of a viable Section 10(b) claim exists, that lawsuit does not involve these six Defendants, outside directors, but instead WWE and its corporate executives. *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, No. 20-cv-2031 (JSR), 2020 WL 4547217, at *1 (S.D.N.Y. Aug. 6, 2020) ("Lead Plaintiff Firefighters' Pension System of the City of Kansas City, Missouri Trust brings a putative class action against defendants World Wrestling Entertainment, Inc. ("WWE"), its CEO

---

[9] The Section 10(b) claim is only alleged in the *Merholz* Second Amended Complaint. Pl.s' Mem. in Opp'n at 19-20. Additionally, while that Second Amended Complaint also alleges an Exchange Act claim under Section 20(a), that claim, not brought against any of the outside directors, is not relevant to this demand futility analysis. *See Merholz* Second Am. Compl. ¶ 288 (alleging that this derivative claim "is asserted on behalf of the Company against Defendant V. McMahon for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).").

Vincent K. McMahon, and its former Co-Presidents George A. Barrios and Michelle D. Wilson
for alleged securities fraud based on defendants' purported misrepresentations about its media
contracts in the Middle East and North Africa.").

That distinction makes a considerable difference with respect to pleading the necessary
element of scienter. *See Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164
(E.D.N.Y. 2019) (Mar. 31, 2019), *appeal dismissed*, No. 19-1263 (Aug. 14, 2019) ("courts in
[the Second] [C]ircuit regularly hold that the signing of a [ ] certification, without more, is
insufficient to plead scienter."); *see also Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008)
("Plaintiff also asserts that membership on the Audit Committee is a sufficient basis to infer the
requisite scienter. That assertion is contrary to well-settled Delaware law."); *Steinberg on behalf
of Hortonworks, Inc. v. Bearden*, No. CV 2017-0286-AGB, 2018 WL 2434558, at *9 (Del. Ch.
May 30, 2018) (finding that "plaintiffs did 'not sufficiently allege that the director defendants
had knowledge that any disclosures or omissions were false or misleading or that the director
defendants acted in bad faith in not adequately informing themselves'" (quoting *In re Citigroup
Inc. S'holder Derivative Litig.*, 964 A.2d 106, 130 (Del. Ch. 2009).

For related reasons, neither the signing of the 10-K filings nor the participation on the
Audit Committee otherwise support demand futility here. *See In re TrueCar, Inc. Stockholder
Derivative Litig.*, No. CV 2019-0672-AGB, 2020 WL 5816761, at *12 (Del. Ch. Sept. 30, 2020)
(applying a similar analysis of particularity to find the pleadings were insufficient); *In re China
Auto. Sys. Inc. Derivative Litig.*, No. CV 7145-VCN, 2013 WL 4672059, at *8 (Del. Ch. Aug.
30, 2013) (holding that allegations that the directors "attested to the misleading financial
statements by signing one of the SEC filings at issue . . ., even viewed in the light most

favorable to the Plaintiffs, contain[ed] no particularized allegations that the directors knew the statements were wrong, or in some other way failed to secure adequate internal controls.").

Accordingly, Plaintiffs have failed to satisfy the demand futility requirement, and their claims against the Defendants must be dismissed on that basis.

### B.   Contemporaneous and Continuous Stock Ownership

Under Section 327 of the Delaware Corporation Law, even if the Plaintiffs had sufficiently plead demand futility, they also must allege having been stockholders of the corporation at the time of the transaction of which such stockholder complains. *See* Del. Code Ann. Title 8, § 327. As the Supreme Court of Delaware has explained:

> [F]or a shareholder to have standing to maintain a derivative action, the plaintiff "must not only be a stockholder at the time of the alleged wrong and at the time of commencement of suit but . . . must also maintain shareholder status throughout the litigation." These two conditions precedent to initiating and maintaining a derivative action are referred to, respectively, as the "contemporaneous ownership" and the "continuous ownership" requirements. The contemporaneous ownership requirement is imposed by statute. The continuous ownership requirement is a matter of common law.

*Arkansas Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del. 2013) (internal quotation marks and alterations omitted) (quoting *Lewis v. Anderson*, 477 A.2d 1040, 46 (Del. 1984).

Likewise, "Rule 23.1 provides that, in a derivative action, the complaint must 'allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share of membership later devolved on it by operation of law.'" *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) (citing Fed. R. Civ. P. 23.1(b)(1)); *see In re Bank of New York Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) (finding under Federal Rule of Civil Procedure 23.1 and New York Business Corporation Law § 626(b), which mirrors Delaware Corporate Law § 327, "a plaintiff must have owned stock in

the corporation throughout the course of the activities that constitute the primary basis of the complaint" and "a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired") (emphases omitted).

In *In re Facebook, Inc*., the plaintiffs failed to demonstrate sufficiently that they acquired stock in the corporation "before the core of the allegedly wrongful conduct transpired." *In re Facebook, Inc.*, 797 F.3d at 159 (finding as insufficient language stating that "[the plaintiff] has continuously held his ownership interests in Facebook since the time of [his] purchases . . . up to and continuing through the time of the efforts culminating in the IPO." (second alteration in original)).

Defendants argue that Plaintiffs have failed to meet the contemporaneous and continuous stock ownership standard. Specifically, they argue that the "Plaintiffs must allege that they continuously held WWE stock from February 7, 2019, to the present" and "[m]erely providing 'a formulaic recitation of the derivative standing requirement will not suffice.'" Def. Mot. 24-25 (quoting *In re Facebook, Inc.,* 797 F.3d at 159).

Plaintiffs argue that "under Rule 23.1(b)(1)[,] a shareholder-plaintiff is only required to allege that he/she was a shareholder or member at the time of the transaction complained of." Pl.s' Mem. in Opp'n at 39 (internal quotation marks omitted) (citing *Galdi v. Jones*, 141 F.2d 984 (2d Cir. 1944)).

The Court disagrees, in part.

The *Merholz* Second Amended Complaint states that: "Plaintiff Ryan Merholz . . . is a current stockholder of the Company and intends to retain ownership of said shares through the prosecution of the instant matter" and that "Plaintiff Melvyn Klein . . . is a current stockholder of the Company and intends to retain ownership of said shares through the prosecution of the

instant matter." *Merholz* Second Am. Compl. ¶¶ 4-5 (emphasis omitted). These factual allegations are "[the] formulaic recitation[s] of the derivative standing requirements" that do "not suffice." *In re Facebook, Inc.*, 797 F.3d at 159. Even when given the opportunity to respond to Defendants' argument that the *Merholz* Plaintiffs had not properly pled the requisite length of stock ownership, the Plaintiffs did not provide further information on their time of stock ownership.

This is not the case with the *Nordstrom* and *Kooi* Amended Complaints. In Mr. Nordstrom's Amended Complaint, he asserts that he "has continuously been a shareholder of WWE since September 26, 2018." *Nordstrom* Am. Compl. ¶ 10. Similarly, Mr. Kooi alleges that he is "a shareholder of WWE and has continuously held WWE common stock since at least 2014." *Kooi* Am. Compl. ¶ 13. While less specific than that of Mr. Nordstrom, Mr. Kooi clearly points to a time of ownership preceding the cause of action.

These assertions are notably different from vague declarations of the plaintiffs in *In re Facebook, Inc.* Furthermore, September 26, 2018 is well before the alleged violations. *See Nordstrom* Am. Compl. ¶ 1 (stating that the Plaintiff is "seeking to remedy Defendants' violations of law that have occurred from February 5, 2019 through February 7, 2020.").

Nevertheless, because the *Nordstom* and *Kooi* Amended Complaints also fail to satisfy the demand futility requirement, as discussed above, the Court need not and will not resolve definitively whether these Plaintiffs have demonstrated contemporaneous and continuous stock ownership. The failings of the *Merholz* Second Amended Complaint, however, are patently clear.

Accordingly, the claims in the *Merholz* Second Amended Complaint would have to be dismissed, even if they had satisfied the demand futility requirement.

### C.  Failure to State a Claim

Having decided that all three lawsuits fail for at least one reason, the Court does not address the issue of whether Plaintiffs also fail to state a claim, even though Defendants' motion in this respect mirrors some of the demand futility arguments. *See e.g.*, Def. Mot. at 28 ("As discussed above in Part I(C)(1), to state a claim for breach of duty based on allegedly false or misleading statements—a *Malone* claim—a plaintiff must allege that the defendant 'knowingly disseminat[ed] materially false information.'" (quoting *Malone*, 722 A.2d at 14) (alteration in original)); *cf. id.* at 13 ("[T]o succeed on a false statement claim, Plaintiffs must plead particularized facts showing that the Outside Directors (i) 'knowingly disseminated materially false information' and (ii) were 'deliberately misinforming shareholders.'" (quoting *Malone*, 722 A.2d at 14)); *see Dietz*, 136 S. Ct. at 1892 ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the all of the claims in the *Nordstrom, Kooi, and Merholz* lawsuits is **GRANTED.**

All three lawsuits fail to satisfy the demand futility standard. The *Merholz* lawsuit additionally fails for lack of standing.

Because of the pending motion to intervene filed by Dennis Palkon, *see* Mot. to Intervene, the Court will await resolution of that motion and its underlying claims before deciding whether the dismissal of these three cases are with prejudice or conceivably can be remedied by seeking leave to file an amended pleading.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of November, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE